### EDWARD P. ADAMS *vs.* CHARLES FLETCHER.

A., injured by falling into an open coal hole in a sidewalk, brought his action for compensation against the owner of the abutting estate. This estate was leased, and the lease provided that the lessee should keep in order the exterior of the building on it. The coal hole was built prior to any legislation, state or municipal, relating to such a matter, and was properly covered when the estate was leased. At the time of A.'s accident it was open to receive the lessee's coal.

*Held,* that the coal hole was not a nuisance, though constructed without special authority, so long as it was kept properly covered.

*Held,* further, that the owner was not liable for A.'s injury resulting from the removal of the cover by the lessee to receive coal.

PLAINTIFF'S petition for a new trial.

*July* 26, 1890. MATTESON, J. This is an action of trespass on the case to recover for injuries received by the plaintiff on May 27, 1889, from falling into a coal hole in the sidewalk adjoining the defendant's premises on Dorrance Street, in Providence. It appeared in evidence that Dorrance Street was a public highway, and that the defendant was, and had been for several years prior to the accident, the owner of a building known as the Narragansett Hotel

building, adjoining said street. The cellar of the building extended under the sidewalk on Dorrance Street, and opened into the street through the hole, into which the plaintiff fell. The hole was constructed and used for putting coal into the cellar. No license or other authority was shown by the defendant for maintaining the hole, or the cellar under the highway. At the time of the accident, that part of the building adjacent to the sidewalk in question was leased to one Lewis H. Humphrey, who was in occupation. The lease contained a covenant by the defendant to keep the exterior of the building in repair. At the time of the demise, the coal hole was provided with a suitable cover, which fitted down into the sidewalk, so that it could not be raised without considerable effort. At the time of the accident, the cover had been removed and the hole left open and unguarded by the agents of the lessee, while they were putting coal into the cellar for his use. At the trial the court ruled, *first*, that the hole in the sidewalk, and the cellar under it, did not constitute a nuisance as long as they were properly covered, and *second*, that the defendant was not liable for an injury to the plaintiff resulting from the removal of the cover by the lessee or his agents, for the purpose and in the manner shown by the testimony as above stated; and accordingly instructed the jury to return a verdict for the defendant. To these rulings and this instruction the plaintiff duly excepted, and now petitions for a new trial, alleging that said rulings and instructions were erroneous.

It was agreed at the hearing that the coal hole in question was constructed prior to any legislation, state or municipal, relating to vaults under sidewalks and coal holes. To entitle the plaintiff to recover against the defendant, as the owner of the property, it must appear that the coal hole was a nuisance at the time the property was leased to the tenant. *Joyce* v. *Martin*, 15 R. I. 558; *Owings* v. *Jones*, 9 Md. 108; *Rich* v. *Basterfield*, 4 C. B. 783, 801. The case does not show that the coal hole was faulty in its construction, or that it had become defective or out of repair, so as to be dangerous to persons passing over it, at the time of the demise. The plaintiff, however, claims that it was a nuisance because no license or authority from the public was obtained for its construction and maintenance. He cites several cases which ap-

parently support this claim. *Congreve* v. *Smith*, 18 N. Y. 79; *Congreve* v. *Morgan*, 18 N. Y. 84; *Wendell* v. *Mayor, &c., of Troy*, 39 Barb. S. C. 329; *Clifford* v. *Dam*, 81 N. Y. 52. The doctrine of these cases is, that the public are entitled to the street in the condition in which they have placed it; and whoever, without special authority, materially obstructs it, or renders its use hazardous, by doing anything upon, above, or below the surface, is guilty of a nuisance; and, as in all other cases of public nuisance, individuals sustaining special damage from it, without any want of due care to avoid injury, have a remedy by action against the author or person continuing the nuisance; that no question of negligence can arise, the act being wrongful. He argues that as a sidewalk with a coal hole in it is, necessarily, less safe than a sidewalk without such a coal hole, it is, in the absence of special authority for its construction and maintenance, a nuisance, and therefore the landlord is bound at his peril to keep such opening covered so that the highway will be as safe as if it were not there. We infer from the cases cited, although the cases themselves do not show it, that in New York there had been, prior to the earliest decisions, some legislation placing the entire control over the streets in the municipal authorities, and forbidding the abutting owner from exercising, without special license or authority, the usual rights of such owner. If this inference be correct, the cases were not like the present, since in the present, as was conceded at the hearing, no such legislation existed when the coal hole was constructed. If in the cases cited there had been such legislation, the reasoning of the courts seems unobjectionable; but if not, we think that they unduly restrict the rights of the abutting owner in the street. In *Fisher* v. *Thirkell*, 21 Mich. 1, 20, the court, after commenting on these New York cases, says: " We are satisfied that, at common law, the making of such excavations under sidewalks in cities, and the scuttles therein, for such purposes as this was made and used for, were not treated as nuisances in themselves, or in any respect illegal, unless the walk was allowed to remain broken up for an unreasonable length of time, or the work was improperly or unsafely constructed, though it would afterwards become a nuisance if not kept in repair. Judging from the reported cases, the usage or custom of constructing such works in cities

seems to have been in England, for a long period, as general as we know it has been in this country. And, though we find many decided cases in the English books, for private injuries caused by these structures being out of repair, and indictments for obstructing highways and streets in a great variety of ways, we have been cited to no English cases, and have discovered none, in which such works have been held illegal in themselves, when properly and safely made, without any legislative permission, or that of the municipal authorities. Their legality seems, in all the cases, to have been assumed by the courts without any showing of such special authority or any authority. They have been treated as nuisances when allowed to be out of repair, and private actions have frequently been sustained for injuries received in consequence ; but we find no intimation of their original illegality, when safely and properly constructed."

In 2 Dillon on Municipal Corporations, § 656 *b.*, the rights of the abutting owner and of the public in streets are thus defined : " The abuttor is entitled as of right, subject to municipal and public regulation, to make any beneficial use of the soil of the street which is consistent with the prior and paramount rights of the public therein for street purposes proper. The right of the public to use the streets, not only for travel and passage, but for sewer, gas, water, and steam pipes and the like purposes is of course paramount to any proprietary rights of the abuttor. The abuttor may as a logical and necessary result, it is believed, whether the fee is in him or in the public, build, *as of right*, underground house vaults in the streets, subject of course to the paramount right of the public for street uses proper where the two rights come in competition, and subject also to reasonable legislative, municipal, or police regulations as to location, mode of construction, and use of such vaults." And in a recent New Jersey case, *Weller* v. *Mc-Cormick*, 19 Atlantic Reporter, 1102, it is said : " The public right is paramount, and includes the right to have the street safe for travel. That of the abutting owner is subordinate to this public right. He may use the highway in front of his premises, when not restricted by positive enactment, for loading and unloading goods, for vaults and shutes, for awnings, for shade trees, etc., but only on condition that he does not unreasonably interfere with the safety of

the highway for public travel." And see, also, 3 Kent Comment. *443 ; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194.

We are of the opinion that the want of a special license or authority to construct and maintain the coal hole in question did not constitute it a nuisance ; and we are also of the opinion that the rulings and instruction of the court to the jury at the trial were correct, and that a new trial should be denied and the petition dismissed.

*Charles Bradley & Walter F. Angell*, for plaintiff.

*Nicholas Van Slyck & Cyrus M. Van Slyck*, for defendant.