HERBERT M. SEARS, Trustee, Appellant, vs. THE CITY OF CHICAGO, Appellee.

*Opinion filed October 28, 1910—Rehearing denied Dec. 9, 1910.*

1. MUNICIPAL CORPORATIONS—*a city's title to streets is held in trust for public.* Whatever title a city has in its streets, whether it owns the fee or only an easement, is held in trust for the public, and the interest of the public must always be paramount to all other interests.

2. SAME—*rights of public in streets cannot be granted away or encroached upon.* A city cannot grant away the rights of the public in its streets, nor can they be encroached upon by private individuals, with or without the consent of the municipality, to the detriment of the public.

3. SAME—*rights of abutting owner where the city owns fee of street.* Where the city owns the fee of a street by statutory dedication, the abutting owners have the right of ingress and egress and an easement of light and air in addition to the right to use the street in common with all other persons, but they have no right to exclusively appropriate any portion of the street, either on the surface or above or below it, without the consent of the city.

4. SAME—*power of city to allow use of streets not inconsistent with public use.* In Illinois a city has power to allow any use of its streets which is not inconsistent with the public objects for which they are held, and it may regulate such use and fix a reasonable compensation to be paid for the same.

5. SAME—*extent of city's power to allow use of streets where it owns the fee.* Where the city owns the fee in a street, its power to allow any use thereof and to regulate such use and fix a reasonable compensation therefor is subject to no limitation except that such use shall be reasonable and in a manner to safeguard the paramount right of the public to the free and unobstructed use of the street for the purpose for which it was dedicated.

6. SAME—*right of abutting owner who owns fee to center of street.* An abutting owner who owns the fee to the center of the street has the right to make any reasonable use of the ground which does not interfere with the full enjoyment of the easement which is held by the city for the use of the public, and he cannot be compelled to pay the city compensation for such use.

7. SAME—*a city acquires only an easement where street is acquired by condemnation.* Where land needed for the purpose of a street is acquired by a city by condemning private property the

city acquires only an easement, and the fee remains in the owner of the property subject to such easement.

8. SAME—*right of a city to regulate use of sub-sidewalk space.* A city has the right to regulate the use of sub-sidewalk space and charge a reasonable compensation therefor where it owns the fee of the streets; but where the fee is in the abutting owners they may make any use of the sub-sidewalk space not inconsistent with the public easement in the street and cannot be required to pay the city compensation for such use.

9. PLATS—*plat of School Section addition to Chicago was a common law plat.* The plat of School Section addition to Chicago was not executed in accordance with the statute then in force and amounted merely to a common law dedication, under which purchasers of lots took title to the center of the streets marked thereon, upon which such lots abutted.

10. SAME—*the curative act of 1843 did not affect prior conveyances.* The curative act of 1843, designed to cure the defective execution of the plat of School Section addition to Chicago, had no effect upon conveyances made prior to the time such act took effect, as the title of abutting owners to the center of the streets vested at the time of the conveyances and could not lawfully be divested or disturbed by the act of 1843.

11. SAME—*right of abutting owner under common law dedication is not a mere contingent interest.* The title of an abutting owner to the center of a street in which the city does not own the fee is not a contingent interest or a mere expectancy but is a present subsisting ownership of the fee, subject to the public easement, which he may subject to any private use he sees fit in connection with his lot, if not inconsistent with the public easement.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

WILSON, MOORE & MCILVAINE, for appellant:

The plat of the original town of Chicago, made in 1830, is governed by the Plat Statute of 1825. That statute was imported from Indiana and had been construed there as a common law plat. *Cox* v. *Railroad Co.* 48 Ind. 178; *Conner* v. *New Albany,* 1 Blackf. 43; *Railroad Co.* v. *Scott,* 74 Ind. 29.

Plats not conforming to the statutes in force at the time create an easement, only, in the streets and alleys and do not vest the fee in the public. *Railway Co.* v. *Johnson,* 204 Ill. 488; *Bowen* v. *Brookport,* 208 id. 35; *Birge* v. *Centralia,* 218 id. 503; *Gould* v. *Howe,* 131 id. 490; *Auburn* v. *Goodwin,* 128 id. 57; *Wilder* v. *Traction Co.* 216 id. 493.

Whatever title a plat passes to any person is a substitute for a deed. *Railroad Co.* v. *Whitham,* 155 Ill. 514.

A plat cannot be altered after it has been recorded. *Lee* v. *Mound Station,* 118 Ill. 304.

The character of a plat is fixed when the first lot is sold under it. After that it is not even subject to revocation. *Brooklyn* v. *Smith,* 104 Ill. 429; *Stevenson* v. *Lewis,* 244 id. 147.

Conveyances, unless limited on their face, run to the center of the highway mentioned as a boundary. *Henderson* v. *Hatterman,* 146 Ill. 555; *Middleton* v. *Pritchard,* 3 Scam. 521; *Chicago* v. *Laflin,* 49 Ill. 172; *Trustees* v. *McClure,* 167 id. 38; *Brewster* v. *Cahill,* 199 id. 312.

This rule applies to government grants as well as to private conveyances. *Middleton* v. *Pritchard,* 3 Scam. 521; 3 Kent's Com. 432; *Railroad Co.* v. *Butler,* 159 U. S. 87; *Paige* v. *Railway Co.* 70 N. E. Rep. 213; *Gere* v. *McChesney,* 82 N. Y. Supp. 191; *Cosgrove* v. *Coal Co.* 40 Atl. Rep. 151.

If the fee in a street is in an abutting owner he may make any use of it not interfering with the public easement, and the city can impose no burden on that property right. There is no rule of statute or policy in Illinois giving any different effect to plats of public property from the general rule just stated. *Chicago* v. *Rumsey,* 87 Ill. 354, and *Zinc Co.* v. *LaSalle,* 117 id. 411, are not to the contrary.

The plat of the original town and also of School Section addition must be construed as of the time they were made. *People* v. *Railway Co.* 239 Ill. 42.

No subsequent statute can change that effect. *Gebhardt* v. *Reeves*, 75 Ill. 301; *St. John* v. *Quitzow*, 72 id. 334.

The compensation ordinance is a revenue measure. *Walker* v. *Springfield*, 94 Ill. 373; *Chicago* v. *Collins*, 175 id. 445.

A city claiming the right to raise revenue by license or tax must put its finger upon the specific authority in its charter. *Wilkie* v. *Chicago*, 188 Ill. 444; *Chicago* v. *Collins*, 175 id. 458; *Park Comrs.* v. *Baldwin*, 162 id. 90; *Seeger* v. *Mueller*, 133 id. 94; *Drummer* v. *Cox*, 165 id. 650; *Chicago* v. *Blair*, 149 id. 317.

Use of space under a sidewalk by an abutting owner is not contrary to law. *Chicago* v. *Milling Co.* 196 Ill. 586; *Masonic Ass'n* v. *Cohen*, 192 id. 216.

City permits for the use of sub-sidewalk space are presumed from acquiescence. *Nelson* v. *Godfrey*, 12 Ill. 20; *Gridley* v. *Bloomington*, 68 id. 47; *Gordon* v. *Pelzer*, 56 Mo. App. 601; *Adams* v. *Fletcher*, 17 R. I. 137; 2 Dillon on Mun. Corp. (4th ed.) sec. 656; 1 Thompson on Negligence, sec. 7.

A city permit for the use of sub-sidewalk space, if not expressly limited, is not revocable except for public use. *Gregsten* v. *Chicago*, 145 Ill. 464; McQuillin on Mun. Ordinances, sec. 420; *Chicago* v. *Laflin*, 49 Ill. 172.

Abutting owners have an interest in the streets and the privilege of using the same, if not inconsistent with the public use. *Donahue* v. *Gas Co.* 73 N. E. Rep. 1108; *Donovan* v. *Pennsylvania Co.* 199 U. S. 279; Lewis on Eminent Domain, (2d ed.) sec. 91*f*.

Long prevailing usage raises a presumption of legality, which must be overcome before the court will hold it illegal. *McCormick* v. *Park Comrs.* 150 Ill. 529; *Chicago* v. *Stock Yards Co.* 164 id. 231; *Babbage* v. *Powers*, 29 N. E. Rep. 132.

Long acquiescence in the use of the sub-sidewalk space, which, if revoked, would result in great injury to the abut-

ting owners, raises estoppel against the city. *Railway Co.
v. People,* 91 Ill. 251; *London Mills* v. *White,* 208 id. 289;
*People* v. *Rock Island,* 215 id. 495.

The compensation ordinance in question is unreasonable and therefore void. *Hawes* v. *Chicago,* 158 Ill. 653;
*Lake View* v. *Tate,* 130 id. 247; 1 Dillon on Mun. Corp.
secs. 319, 327, 328.

EDWARD J. BRUNDAGE, Corporation Counsel,, and WILLIAM D. BARGE, for appellee:

The city has exclusive control of its streets. Cities and
Villages act, art. 5, sec. 1; *Ottawa* v. *Walker,* 21 Ill. 605;
*Deshong* v. *New York,* 176 N. Y. 475; *Farson* v. *Fogg,*
203 Ill. 326; *Lee* v. *Harris,* 206 id. 428.

The right of the public in a street is not confined to the
surface. Elliott on Roads and Streets, (2d ed.) sec. 17;
*Bybee* v. *State,* 94 Ind. 443.

The city controls the soil beneath the street as well as
the surface. *State* v. *Murphy,* 134 Mo. 548.

The lot owner can use the adjacent street only when the
city consents, and those who excavate in streets without the
city's consent are trespassers. *Stephani* v. *Brown,* 40 Ill.
428; *Zinc Co.* v. *LaSalle,* 117 id. 411; *Coal Co.* v. *LaSalle,*
136 id. 119; *Masonic Ass'n* v. *Cohen,* 192 id. 210; *Allen*
v. *Boston,* 159 Mass. 324; *Hawesville* v. *Hawes,* 6 Bush.
232; *DesMoines* v. *Hall,* 24 Iowa, 234; *Davis* v. *Clinton,*
50 id. 585.

In granting consent to use the streets the city may require compensation. *McCarthy* v. *Chicago,* 53 Ill. 40; *Chicago* v. *Milling Co.* 196 id. 580; *Gregsten* v. *Chicago,* 145
id. 451; *Deshong* v. *New York,* 176 N. Y. 475; *St. Louis*
v. *Telegraph Co.* 148 U. S. 92; 149 id. 465; *Telegraph
Co.* v. *Baltimore,* 79 Md. 502; 156 U. S. 210; *State* v.
*St. Louis,* 145 Mo. 571; *Railway Co.* v. *Chicago,* 176 Ill.
253; *Byrne* v. *Railway Co.* 169 id. 75; *Lobdell* v. *Chicago,*
227 id. 218.

Power to regulate is power to license. *Packing Co.* v. *Chicago,* 88 Ill. 221; *Kinsley* v. *Chicago,* 124 id. 359.

That the purpose of a licensing ordinance is to produce revenue does not defeat it. *Dennehy* v. *Chicago,* 120 Ill. 627; *Kinsley* v. *Chicago,* 124 id. 359; *Banta* v. *Chicago,* 172 id. 204.

It is immaterial whether the city or the lot owner has the fee in the street, for even when he owns the fee he has no absolute right to appropriate the street to his own use or to make excavations therein. Dillon on Mun. Corp. (4th ed.) sec. 699; *Barry* v. *Terkildsen,* 72 Cal. 254; *Allen* v. *Boston,* 159 Mass. 524; *McDevitt* v. *Gas Co.* 160 Pa. St. 367; *Jorgensen* v. *Squires,* 144 N. Y. 280; *Nelson* v. *Godfrey,* 12 Ill. 22; *Gridley* v. *Bloomington,* 68 id. 47; *Palatine* v. *Krueger,* 121 id. 72.

The reason the city cannot compel the lot owner to clean the street or sidewalk is that he has no more interest in it than has any other citizen. *Gridley* v. *Bloomington,* 88 Ill. 554; *Chicago* v. *O'Brien,* 111 id. 532; *Chicago* v. *Crosby,* 111 id. 538.

Even when he has the fee of the street the city's right is the same as if it had the fee. *Manley* v. *Gibson,* 13 Ill. 308; *Railroad Co.* v. *Joliet,* 79 id. 25; *Maywood Co.* v. *Maywood,* 118 id. 61; *Chicago* v. *Ward,* 169 id. 392; *Russell* v. *Lincoln,* 200 id. 392; *Marsh* v. *Fairbury,* 163 id. 401.

Where the fee in the street is in the city the lot owner has no interest in the street except in common with the public,—"the right of passage over it." In such case he has "no title to be assailed nor possession to be invaded." *Canal Trustees* v. *Haven,* 11 Ill. 554; *Hunter* v. *Middleton,* 13 id. 50; *Zinc Co.* v. *LaSalle,* 117 id. 411; *Coal Co.* v. *LaSalle,* 136 id. 119.

The fee of the streets is in the city. *Chicago* v. *Rumsey,* 87 Ill. 348; *Zinc Co.* v. *LaSalle,* 117 id. 411; *People* v. *Railway Co.* 239 id. 42; *United States* v. *Lynah,* 188

247—14

U. S. 445; *Morris* v. *Chicago,* 11 Ill. 650; *Corrigan* v. *Chicago,* 144 id. 537; *Bonner* v. *Peterson,* 44 id. 253.

The city is not estopped from passing or enforcing the ordinance, because there is nothing to show that the city has misled anyone. *Lee* v. *Mound Station,* 118 Ill. 304; *Russell* v. *Lincoln,* 200 id. 511; *DeKalb* v. *Luney,* 193 id. 185.

By the widening of Madison street by condemnation the city acquired the fee of the land taken. City charter of 1851, chap. 4, secs. 4, 54; chap. 6, secs. 1, 2, 7, 10, 14; *Driscoll* v. *New Haven,* 75 Conn. 92; *Gasaway* v. *Seattle,* 21 L. R. A. (N. S.) 68; *Reading* v. *Davis,* 153 Pa. St. 360; *Railroad Co.* v. *Paper Mills,* 149 id. 18; *Philadelphia* v. *Ward,* 174 id. 45; *United States* v. *Lynah,* 188 U. S. 445; *Morris* v. *Chicago,* 11 Ill. 650; *Skinner* v. *Lake View Avenue Co.* 57 id. 151; *Bonner* v. *Peterson,* 44 id. 253; *Allen* v. *Chicago,* 176 id. 113; *Stubbings* v. *Evanston,* 136 id. 37; *Corrigan* v. *Chicago,* 144 id. 537.

When the city condemns land it takes not only the soil but also all interests therein. *Railroad Co.* v. *Williams,* 54 Pa. St. 103; *State* v. *King Co.* 31 Wash. 445; *Lewis on Eminent Domain,* (3d ed.) sec. 459.

"Land" includes the face of the earth and everything under and over it. It embraces all titles and rights therein. *Lightfoot* v. *Grove,* 52 Tenn. 473; *Smith* v. *Atlanta,* 92 Ga. 119; *Mitchell* v. *Warner,* 5 Conn. 497; *Winston* v. *Cornish,* 5 Ohio St. 477; *Fish* v. *Fowlie,* 58 Cal. 373.

To take land by eminent domain is to exclude the former owner from possession and change the title. *Nicholl* v. *Telephone Co.* 62 N. J. L. 156.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

Herbert M. Sears, as trustee under the will of Caroline B. Sears, claiming to be the owner of lots 1, 6 and 7, in block 138, of School Section addition to the city of

Chicago, filed a bill in equity in the circuit court of Cook county against the city of Chicago to enjoin said city from enforcing an ordinance passed February 5, 1906, prescribing the terms and conditions under which abutting property owners might use the sub-sidewalk space adjacent to their lots for private purposes in connection with the buildings located on such lots.

This case is one of a number brought by different property owners in order to test the validity of the ordinance under the varying facts connected with the different pieces of property involved. So far as the same is necessary to a proper understanding of the questions involved in the present case the ordinance challenged by the bill is as follows:

"Sec. 1. No person shall use any space underneath the surface of any street or other public ground in this city, or construct or maintain any structure thereunder, without first obtaining a permit so to do from the commissioner of public works of the city.

"Sec. 3. Every applicant for such a permit shall file with his application his bond in the penal sum of $10,000, with surety or sureties to be approved by said commissioner of public works; and such bond shall be conditioned that the person to whom such bond shall be issued, his heirs, successors or assigns, will save and keep the city free and harmless from any and all loss or damage, or claim of damage, arising from or out of the use of the space or structure therein mentioned, and for the maintenance of the street, alley or other public way, or the sidewalk over such space, as the case may be, * * * and for the prompt and full payment of the compensation hereunder required during his ownership of said property, so long as said permit shall be outstanding.

"Sec. 4. When the space so used does not extend more than fifteen feet below the surface of the street, alley, way or ground over the same, the person, firm or corporation making, using or maintaining any such structure or using

space underneath the surface of any street, alley, public way or public ground, shall render to the city as the annual compensation for such use, whenever the adjoining property is subject to general taxation, a sum equal to four per cent of the amount determined by multiplying the number of square feet of surface over the space so used by a sum equal to one-tenth of the land value of the average square foot in the lot abutting on such space, as fixed by the last assessment thereof for general taxation by the State or county authorities: * * * *Provided, however,* that in every case the annual compensation shall be at least $10.

"Sec. 6. If any person now using any space underneath any street, public alley, sidewalk or public way shall fail to take out a permit for such use, as herein provided, within ninety days after this ordinance is in effect, then the commissioner of public works shall proceed to remove every such structure and close the space therein.

"Sec. 11. Nothing in this ordinance contained shall be held or construed to apply to any person now using any such space underneath the surface of any street or other public ground according to the terms of any ordinance heretofore passed which requires the payment of compensation for such use if such person is making such payments, nor so long as such payments are made according to the terms of such ordinance."

The property involved in this case is located on the south-east corner of Dearborn and VanBuren streets and is bounded on the east by Plymouth court. VanBuren street runs east and west. Dearborn street runs north and south, and intersects VanBuren at the north-west corner of lot 1 involved in this case. Upon these lots is located an office building known as the Old Colony building, which is seventeen stories high, and is 148½ feet on Dearborn street and 68 feet on VanBuren. The building has six elevators and is occupied by about one hundred and fifty tenants. The space under the sidewalk on VanBuren street is used for

the elevator machinery, while that under Dearborn street and Plymouth court is used for fuel and ashes, and as a means of bringing fuel into the building and conveying ashes and other refuse out of the same.

The contentions of the parties may be briefly stated, as follows: The complainant below contends that he is the owner of the fee to the center of the streets and to the center of Plymouth court, subject to the easement in the public, and that as such owner he has the right to use the sub-sidewalk space for private purposes in connection with his building, and that the ordinance imposing upon him a tax for the use of such space is illegal and void. On behalf of the city it is contended that it owns the fee in the streets adjacent to complainant's property and in Plymouth court, and in the second place it is contended by the city that, whether it has a fee or only an easement in the said streets, it has the power, under the statute, to pass the ordinance in question.

The circuit court sustained the bill and granted an injunction against the enforcement of the ordinance in so far as it affected the Dearborn street side of the complainant's property, but held as to VanBuren street and Plymouth court the city owned the fee and that the ordinance was a valid exercise of its power of control over highways. The complainant below has appealed from the decree dismissing his bill as to VanBuren street and Plymouth court, and the city has assigned cross-errors calling in question that portion of the decree below which granted the relief prayed for as to Dearborn street. Since the rights of the city in each of these streets and in Plymouth court were acquired at different times and in different ways, it will be necessary to briefly state the manner in which the city's rights were acquired in each place.

Appellant's premises were originally a part of section 16, township 39, north, range 14, east of the third principal meridian, and were granted by the United States to the

State of Illinois for the use of the inhabitants of the township in which the same were situated, for the use of schools. The proposed grant was accepted by the State of Illinois by ordinance duly passed August 26, 1818. Said section 16 was platted by a school commissioner appointed pursuant to an act of the legislature of Illinois adopted January 22, 1829, which plat was recorded in the recorder's office of Cook county some time between 1833 and 1836. That portion of the city of Chicago which was originally section 16 is known as School Section addition to Chicago. The school commissioner's plat of section 16 divided said section into 142 blocks, leaving open spaces presumably for streets, but there is nothing on the plat to indicate what the spaces are intended for except figures indicating the width, which in some instances is 40 feet and in others 66 feet. Block 138 in the School Section addition is 396 feet north and south by 387 feet and nine inches east and west. North of block 138 is an open space 66 feet wide, running east and west the entire length of said addition. East of said block there is also an open space indicated by the plat, but there is nothing to show its width or the purpose for which it was left. Truman G. Wright having acquired title to block 138 made a subdivision thereof, dividing the same into twenty-four lots, in 1836, a plat of which was filed for record in Cook county February 16, 1836. Lots 1, 6 and 7 in block 138, as shown by Wright's subdivision, are the premises belonging to the appellant. By Wright's subdivision of block 138 a street 70 feet wide is designated on the plat east of the property in question and one 66 feet wide north of said premises. The 70-foot space on the east is referred to in this record as Plymouth court and the 66-foot street on the north is known as VanBuren street, and occupies the same place that was left open north of block 138 by the school commissioner's plat. Dearborn street, opposite the premises of appellant on the west, was opened by the city by condemnation proceedings in July,

1887, the eastern half of which was so located on appellant's lots.

So far as the right of the city in Plymouth court is concerned, it rests entirely upon the plat made by Truman G. Wright, but as to VanBuren street the city's right may rest upon either the plat made by the school commissioner or that made subsequently by Wright. If the plat of the school commissioner for any reason failed to vest the fee in VanBuren street in the city, the fee passed by the conveyance of block 138 to Wright to the center of the street, and he, having such fee, had the power to dedicate it, so far as his title extended, to the public by a properly executed plat when he subdivided block 138.

Whatever title the city has in its streets and other public grounds is held in trust for the public, and this is true whether it owns the fee or only an easement. The interest of the public, which is the primary object of the trust, must always be paramount to all other interests. The city cannot grant away the rights of the public, nor can they be encroached upon by private individuals, with or without the consent of the municipality, to the detriment of the superior rights of the public. (Elliott on Roads and Streets, sec. 17; *State* v. *Murphy,* 134 Mo. 548; 34 L. R. A. 369; *Matthiessen & Hegeler Zinc Co.* v. *City of LaSalle,* 117 Ill. 411.) Where the title to its streets is acquired by dedication of the owner in accordance with the statute relating to plats, the acknowledgment and recording of such plat have the effect, both in law and in equity, of conveying a fee simple title to the city of such portions of the premises platted as are noted on the plat as donated to the public. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25.) Where the city owns the fee in a street, the abutting lot owner has the right of ingress and egress and an easement for light and air in addition to the right to use the street in common with all other persons. (Jones on Easements, sec. 489.) The owner of an abutting lot

upon a street which has been dedicated to the public in accordance with the statute has neither the possibility of reverter, nor any title, right or interest, in law or equity, under which he can justify an exclusive appropriation of any portion of the said street, either on the surface or above or below it, without the consent of the municipality. *Union Coal Co.* v. *City of LaSalle*, 136 Ill. 119.

Whatever may be the rule in other jurisdictions, the law is settled in this State that a city may, under the power of exclusive control of its streets, allow any use of them which is not inconsistent with the public objects for which they are held. (*Nelson* v. *Godfrey*, 12 Ill. 20; *Gridley* v. *City of Bloomington*, 68 id. 47; *Chicago and Northwestern Railway Co.* v. *People*, 91 id. 251; *City of Quincy* v. *Bull*, 106 id. 337; *Chicago Municipal Gas Light Co.* v. *Town of Lake*, 130 id. 42; *Gregsten* v. *City of Chicago*, 145 id. 451; *West Chicago Masonic Ass'n* v. *Cohn*, 192 id. 210; Dillon on Mun. Corp. 541-551.) And it is equally well settled that the city may regulate such use and fix a reasonable compensation to be paid for the same. (*McCarthy* v. *City of Chicago*, 53 Ill. 38; *City of Chicago* v. *Norton Milling Co.* 196 id. 580; *Lobdell* v. *City of Chicago*, 227 id. 218.) The power of the municipality in this regard in cases where it owns the fee in its streets is subject to no limitation except that its exercise shall be reasonable and in a manner to safeguard the paramount right of the public to the free and unobstructed use of the street for the purpose for which it was dedicated. In cases, however, where the municipality only has an easement in its streets and the fee remains in the abutting lot owners, the relative rights of the municipality and the abutting lot owners are to be determined under entirely different rules of law. When private property is taken for public use, the general rule is that it can only be taken to the extent that the public use to which it is to be applied requires. A law could not be sanctioned which would permit a corporation

to condemn private property for the sole purpose of applying such property to a purely private use. The law provides a method by which the owner of real estate which is platted into town lots may, if he so desires, convey a determinable fee to the municipality by the execution of a properly acknowledged and recorded plat. When this course is adopted, the owner, having the power to make any disposition of his property he sees fit, can invest the municipality with the fee. If such statutory plat is made and recorded, all persons who subsequently purchase lots according to such plat will be presumed to have notice that they acquire no rights in the public streets except those already referred to. On the other hand, one buying a lot abutting upon a street in which the city has only an easement must be presumed to purchase with knowledge of the fact that a conveyance of the abutting lot carries the title to the center of the street, subject only to the easement of the public therein. The abutting lot owner thus being the owner of the fee to the center of the street upon which his lot is located, has the right to make any reasonable use of the same which does not interfere with the full enjoyment of the easement which is held for the use of the public. (3 Kent's Com.—12th ed.—433; *Hurley* v. *Chandler*, 6 Mass. 454; *Tucker* v. *Tower*, 26 id. 108.) It is as unreasonable as it is illogical to say that the abutting lot owner who owns the fee in a street, subject only to the easement of the public, must pay the city for the privilege of using his own property in a manner that in no way interferes with or disturbs the full enjoyment of the easement.

It follows, we think, from the foregoing principles of law, that the validity of the ordinance involved cannot be questioned when applied to the owners of lots located upon streets in which the city owns the fee, and it is equally clear that the ordinance cannot be enforced against the owners of lots abutting upon streets wherein the city has only an easement. In accordance with these views the holding

of the court below in regard to Dearborn street was correct. As we have already seen, that street was acquired by condemnation, which, under the law, left the fee to the center of the street in the abutting owners. *Illinois Central Railroad Co.* v. *City of Chicago,* 138 Ill. 453; *Reed* v. *Ohio and Mississippi Railway Co.* 126 id. 48; Cooley's Const. Lim. 550.

The rights of the city in VanBuren street and Plymouth court were acquired under plats neither of which was executed in accordance with the statute. So far as the plat made by the school commissioner is concerned, counsel for the city admit that it does not comply with the law of 1833 providing for the recording of plats, which was in force at the time the plat was recorded. This plat was before this court in the case of *Sanitary District* v. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* 216 Ill. 575, and it was there held that the plat of School Section addition not having been executed according to the statute then in force, amounted merely to a common law dedication, and that the abutting lot owners took the fee to the center of the streets marked thereon. The city contends that the curative act of 1843 removes all legal objections to this plat and gives it the same effect it would have had if the law of 1833 had been complied with in the first instance.

The curative act relied on, so far as it concerns this plat, is as follows: "That the recorder of the county of Cook is hereby directed to certify upon the maps or plat of the school section recorded in his office in book A, page 315, that the same is the plat of the School Section addition, an addition to the town of Chicago, and to make such other certificates upon said maps as the common council of Chicago shall direct to remedy any omission or defect in the same, and the said plat or map, when so certified, is hereby declared and made good, valid and legal for all purposes whatever, any omission or defect in the same to the contrary notwithstanding, and the same shall hereafter be

deemed good, valid and legal and all omissions and defects
in the same cured by this law, and the common council of
such city are hereby authorized to cause said school section
to be re-surveyed and the same run out so as to correspond
with said plat."

This act is relied on by the city, and it is strenuously
contended that it had the effect of vesting the fee in the
streets in the city.  To this we cannot assent.  The title of
the abutting lot owners who purchased lots in the School
Section addition prior to the passage of the act of 1843
had become vested to the center of the streets, and to give
the act of 1843 the effect contended for would be to de-
prive such abutting owners of their property without due
process of law and would be a taking of private property
for public use without compensation.  The title of the abut-
ting owner to the center of the street where the city does
not own the fee is not a contingent interest or a mere ex-
pectancy but is a present subsisting ownership of the fee,
subject to the easement of the public, which he may subject
to any private use he sees fit, in connection with his prem-
ises, which is consistent with the dominant rights of the
public in the easement.  Any statute which, acting retro-
actively, would deprive one of property rights thus vested
would be unconstitutional and void.  (McGhee on Due
Process of Law, p. 153 *et seq.* and cases cited in notes.)
Appellant's lots had been sold and patents issued thereto
fully five years before the act of 1843 was passed, hence
that act could not disturb the vested rights acquired to the
center of the streets by deed from the owner.

What has already been said disposes of all legal ques-
tions arising on this record.  The plat made by Truman G.
Wright in 1836, on which Plymouth court and VanBuren
street appear as public grounds, was not executed in con-
formity to the statute of 1833.  This is admitted by coun-
sel for the city.  Appellant being the owner in fee of all
of the sub-sidewalk space which he is using in connection

with his building, and there being no pretense that he is in any way interfering with the rights of the public, his bill for an injunction against the enforcement of said ordinance against him should have been sustained. The court below therefore erred in dismissing the appellant's bill as to Van-Buren street and Plymouth court. The decree in this regard is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*