S. H. KRESS & COMPANY, A CORPORATION, R. V. LABARRE AND W. G. MILLER, *Appellants,* v. THE CITY OF MIAMI, A MUNICIPAL CORPORATION, *Appellee.*

Opinion Filed July 10, 1919.

1. A municipality cannot deprive a person of his property or property rights, by declaring by ordinance or otherwise that to be a nuisance, which in fact is not a nuisance.

2. The owner of the fee in a street has the right to use the subsurface in front of his property, so long as he does not interfere with the rights of the municipality below the surface for sewers, and pipes for water, gas or other proper purposes.

3. The owner of the fee in a street has the right, subject to reasonable municipal regulation, to make openings in the sidewalk to give access to the area beneath, but he is bound so to construct and cover the opening that it shall at all times be as safe for the use of the public as if it did not exist, and public travel over the same be not unreasonably interfered with.

4. A city has the right to require the owner of the fee in a street, to procure a permit before making an opening in the sidewalk, and it has the right to see that proper safeguards are thrown about the work, and that in its progress the right of the public to use the sidewalk is not unreasonably interfered with.

5 A city may regulate how excavations in the subsurface of a street shall be made by the owner of the fee, and may regulate how trap-doors or other appliances for closing the opening shall be constructed, but it may not arbitrarily refuse to grant a permit, nor under the guise of regulation, place an additional burden upon the abutting owner, or make regulations that would in effect deprive him from exercising his rights in the subsurface.

An Appeal from the Circuit Court for Dade County; H. Pierre Branning, Judge.

Decree reversed.

*Lilburn R. Railey,* for Appellants;

*Hudson, Wolfe & Cason,* for Appellee.

BROWNE, C. J.—This is an appeal from the decree of the chancellor permanently enjoining S. H. Kress & Company, its agents, servants and employees from constructing a vault or subway under a sidewalk in the City of Miami, and requiring them to place the sidewalk in the condition in which it was prior to the time any excavation was made thereunder.

We have considered but will not discuss all the assignments of error, but confine ourselves to such as relate to the vital issue; the right of a person owning land abutting on a street in which he has the fee, to excavate and construct a subway or cellar beneath the surface of the sidewalk, and have access thereto by properly constructed and safeguarded trap-doors or other equipment.

The authorities are not in harmony, but they may be grouped into three classes; those that nold that the owner of the fee to the street is also the owner of the subsurface and may make excavations therein if he does not unreasonably interfere with the public easement; those that hold that excavations may be made as long as they are not forbidden by ordinance or other regulations of the city; those that hold that every excavation in the street or sidewalk made without municipal consent is a nuisance *per se.*

Those in the first group follow the older, and we think, the better rule, as laid down by so eminent an authority as Lord Mansfield, who said, "1 Ro. Abr. 392 Letter B. pl. 1, 2, is express—'that the king has nothing but the passage from himself and his people; but the freehold and all profits belong to the owner of the soil.' So do the trees upon it, and mines under it (which may be extremely valuable). The owner may carry water

in pipes under it." Goodtitle *ex dismiss.* Chester v. Alker and Elmes, 1 Burrow's Rep. 133.

This doctrine has been modified by some of the later decisions of the courts of this country, but we cannot follow those that seek to extinguish all rights of the owner of the fee to the subsoil, or give to municipalities the power to take from such owner his unsurrendered right in the subsurface. The distinction between the doctrine of those courts that hold every excavation under the street or sidewalk made without municipal authority is a nuisance *per se,* and those that hold they are lawful so long as not forbidden by the ordinances of the city, is more in name than in substance. A right that may be taken from a person at the will of the city is not a right but a privilege, and when we sustain the right of the city to grant or withhold from the owner of the fee the privilege of making excavations in the subsoil of a street adjacent to his property, his right vanishes. Neither can a municipality deprive the owner of his property or property rights, by declaring by ordinance or otherwise that to be a nuisance, which in fact is not a nuisance.

When the excavation for the areaway beneath the sidewalk was commenced by the appellant there was no ordinance prohibiting it, but subsequently one was enacted that did, and it is contended that the abutting owner thereby lost his right to proceed with the work of constructing the cellar and trap-doors. We call attention to this as illustrative of the proposition stated *supra,* that a recognition of the right of the city to enforce such an ordinance, denies the right of the abutting owner to the subsoil of a street, because where property rights

exist they cannot be taken away by an ordinance except when the property or the use to which it is put is a nuisance.

Any attempt to discuss the cases holding the various doctrines on this subject, would extend this opinion to too great length, without any beneficial result, and we shall content ourselves with citations from some of those that hold as we do. In Dell Rapids Mercantile Co. v. City of Dell Rapids, 11 So. Dak. 116, 75 N. W. Rep. 898, the court said: "Assuming that Cooley owned the soil to the center of the street, he was at liberty to use it, subject to the public easement, the same as other parts of his property, and the construction of the areas was not in itself unlawful."

"The excavation by the plaintiffs of the area under the sidewalk was not unlawful; they owned to the center of the street, subject to the right of way of the public over the surface. For any interference with this right of way, the plaintiffs would have been responsible. But so long as they did no injury to the street, they were at liberty to use the space under it, as they might any other part of their property." McCarthy v. City of Syracuse, 46 N. Y. 194.

"A gift of a right of way, is *not* a gift of the earth and other minerals that may exist within the boundary lines of the way, the right of which is given." Smith v. City of Rome, 19 Ga. 89.

"But it is conceded there was no such ordinance of the City of Detroit, applicable to the construction of this work (and that no license or permission was obtained from the common council for its construction), and we are satisfied that, at common low, the making of such excavations under sidewalks in cities, and the scuttles there-

in, for such purposes as this was made and used for, were not treated as nuisances in themselves, or in any respect illegal, unless the walk was allowed to remain broken up for an unreasonable length of time, or the work was improperly or unsafely constructed; though it would afterward become a nuisance if not kept in repair.

"Judging from the reported cases, the usage or custom of constructing such works in cities seems to have been, in England, for a long period, as general as we know it · has been in this country. And, though we find many decided cases in the English books, for private injuries caused by these structures being out of repair, and indictments for obstructing highways and streets in a great variety of ways, we have been cited to no English cases, and we have discovered none, in which such works have been held illegal, in themselves, when properly and safely made, without any showing of such special authority or any authority. They have been treated as nuisances when allowed to be out of repair, and private actions have been frequently been sustained for injuries received in consequence; but we find no intimation of their original illegality, when safely and properly constructed. This will appear from the cases, cited below upon the question whether the tenant or the landlord is bound to keep them in repair. And the same view seems to have been quite generally taken in this country, outside of the State of New York." Fisher v. Thirkell, 21 Mich. 1, 4 Am. Rep. 422.

In McQuillin on Municipal Corporations, Vol. III, Sec. 1343, the subject is thus treated: "*Excavations* may be considered from three viewpoints: *First*, as merely temporary ones to accomplish a lawful purpose, but interfering to some extent with public travel for a short time; *second*, permanent excavations in sidewalks, such as those

which lead to basements by stairs enclosed by a railing on two sides, the question not relating so much to the right to use the space under the surface of the street as to the right to deprive permanently the public of the right to pass over a certain part of the sidewalk; *third,* the right to use the subsurface where it in no way conflicts with the public use of the surface.

"As to the *first class,* they are largely regulated by municipal provisions, and where for a lawful purpose are not interfered with further than to require a permit to be obtained from the municipality.

"As to the *second class,* it has been said that, in the congested portions of large cities the use of basements are of great value, and the construction of areaways seems to be a necessity. So coal holes consisting of an iron rim into which a solid metal covering is adjusted, resting on a flange made for the purpose, are common in nearly all cities. * * * As to the third class, the first question to be. decided is who owns the fee of the street. If the abutting owner has title thereto, he may use the space under the street, to the center thereof, the same as his other property, so long as he does not interfere with the superior rights of the municipality below the surface for sewers, etc. On the contrary, if the fee of the street is in the municipality, it may require abutting owners to obtain a permit before excavating under a street for room for a vault, cellar, engine room, or the like, and may require the payment of reasonable rent for the use thereof."

Other cases in point are: Adams v. Fletcher, 17 R. I. 137, 20 Atl. Rep. 263; Gordon v. Peltzer, 56 Mo. App. 599; Day v. City of Mt. Pleasant, 70 Iowa 193, 30 N. W. Rep. 853; Papworth v. City of Milwaukee, 64 Wis. 389, 25 N.

W. Rep. 431; Tacoma Safety Deposit Co. v. City of Chicago, 247 Ill. 192, 93 N. E. Rep. 153, 31 L. R. A. (N. S.) 868, and notes.

Upholding as we do, the right of the owner of the fee in a street to use the subsurface the same as his other property, so long as he does not interfere with the rights of the municipality below the surface for sewers and pipes for water, gas and other proper purposes, it follows that the owner has the right, subject to reasonable municipal regulation, to make openings in the sidewalk to give access to the area beneath, but he is bound so to construct and cover the opening that it shall at all times be as safe for the use of the public as if it did not exist, and public travel over the same be not unreasonably interfered with.

The city has the right to require the appellant to procure a permit before making an opening in the sidewalk, and it has the right to see that proper safeguards are thrown about the work, and that in its progress the right of the public to use the sidewalk is not unreasonably interfered with. It may also regulate how the excavation shall be made, and the trapdoors or other appliances for closing the opening constructed, but it may not arbitrarily refuse to grant a permit, nor under the guise of regulation, place an additional burden upon the abutting owner or make such regulations as would in effect deprive him from exercising the rights recognized in this decision.

The decree of the chancellor granting the injunction is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.