**CITY OF FORT WORTH, Appellant,**

v.

**CITIZENS HOTEL COMPANY, Appellee.**

No. 16530.

Court of Civil Appeals of Texas.

Fort Worth.

May 22, 1964.

Rehearing Denied June 19, 1964.

S. G. Johndroe, Jr., City Atty., Fort Worth, for appellant.

Brown, Herman, Scott & Young and A. M. Herman, Cantey, Hanger, Johnson, Scarborough & Gooch, and Emory Cantey, Crumley & Hooper, and Frank Crumley, Hudson, Keltner, Jordan, Smith & Cunningham, and Edgar H. Keltner, Jr., McGown, Godfrey, Logan & Decker, and B. E. Godfrey, Thompson, Walker, Smith & Shannon and Ogden, Shannon, and Stone, Parker, Snakard, Friedman & Brown and G. W. Parker, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice.

The material question to be determined is whether the owner of the fee interest in and under a public street (to its center), who has for many years used an underground portion thereof with knowledge and express or implied consent by the incorporated city possessing the street easement, may be subjected to liability for the payment to the city of a rental charge for its continued use.

The trial court determined that the owner, who as plaintiff sought an injunction and declaratory judgment, was not obliged to pay the rent sought to be charged and granted injunction against the municipality. We agree.

We believe that certain circumstances of the particular situation under consideration should be recognized: (1) the public street easement in which the user holds the fee, as the abutting property owner, is not held by the municipality in its private or proprietary capacity, but rather is held by it as trustee for the public for a use for public purposes; (2) the use for which the fee owner has heretofore put an underground portion, and is presently using the same, has not and does not interfere with any existing public use; (3) the charge sought to be imposed by the municipality is for rent, as a charge levied by a landlord upon a tenant, as opposed to an assessment of expense for the relocation of underground utility lines, etc., occasioned by the fee owner's use, or to any form of taxation; (4) the municipality does not seek to appropriate the underground portion being used by the fee owner in order to devote the same to any public use nor to prepare it for such a use, but is proceeding on the premise that it is entitled to receive compensation by way of rent therefor until it should become necessary to take it into possession for public purposes; (5) the fee owner, in this court, admitted and conceded the superior right of the municipality to reduce the premises in question to possession as and when necessary for such to be done for public purposes, and even prior thereto to regulate and control the same as essential for the protection of the public safety and convenience,—although denying any right of the municipality to reduce the same to possession prior to the time such becomes a public necessity, and only then to the extent and degree essential thereto; (6) the charge sought to be imposed was based upon the ad valorem tax value of the property, and no relation was shown between the charge and the cost to the municipality for licensing and policing the use made of the subsurface area.

All of the aforesaid was expressly found by the trial court or was necessarily implied under express findings. We are of the opinion that such found adequate support in the evidence produced before the court and was in accord with and not contrary to the weight and preponderance thereof.

The condition and circumstance of the appellee Hotel Company in this case is rather common. In the cities of this state many of the better buildings built years ago were constructed in such manner that the basement areas were used for barber shops, employee's quarters, storage, clubrooms, etc. Oftentimes there were outside stairway openings in the sidewalk

area (a part of the dedicated public street) leading down to the basement, particularly in the case of barber shops. Also common were openings in the sidewalk covered by grills, affording light and air circulation into the basement areas. Most of these buildings were constructed before the advent of modern air-conditioning.

These buildings were thus constructed with the full knowledge and consent of the municipalities in which they were located. The use of the basement areas, as so constructed, proceeded for many years without complaint and without any attempt made to impose a charge in the nature of rent for use of such areas lying outside and beyond the building lines and underneath the sidewalk area. In those days the underground portion of the public streets (including the sidewalks) were not so packed with underground utility lines as in modern times. Without doubt, the continued need for more and more space for such underground facilities has come into conflict with the diminished street areas resultant because of the aforedescribed use by the abutting property owners.

In the instant case there is evidence that the City of Fort Worth has found it necessary to re-route underground lines in the street adjacent to the hotel in question, or to re-design the manner of their installation, with an attendant increase of expense, as a direct result of the appellee's use of the area under the sidewalk. The charge sought to be assessed against the appellee Hotel Company, however, is wholly unrelated to any increase of expense thereby occasioned.

Appellee and its predecessors in title have held and used the premises since the year 1920, when the hotel was built. It uses eight (8) or nine (9) feet of subsurface area beyond its property line, the area lying under the sidewalk which is a part of the public street. Until shortly before time of trial, such use had continued without objection on the part of the appellant City, and without any attempt on

its part to assess a charge in the nature of rent because thereof.

On May 19, 1961, the City adopted its Ordinance No. 4460, amending Ordinance No. 4355 (adopted August 19, 1960), under and by authority of which ordinances it was directed that the Tax Assessor-Collector and the Director of Public Works for the City of Fort Worth should investigate and report to the City Council recommending whether the City should issue any future permit to any property owner abutting upon a public street or sidewalk to use the same as necessary or proper to the enjoyment of said abutting property owner. It was further provided that the City Council should, in the event it desired to issue such a permit, fix the terms and conditions of any such grant and the time for which it should exist, with right reserved to terminate the grant whenever in its judgment the grant might become inconsistent with the public use thereof, or when it might become a nuisance.

Operating under the purported authority of the aforesaid ordinances, the City of Fort Worth sought to impose a charge upon the Hotel Company of some $2,181.00 for the year 1962. By the time the case was tried a somewhat increased charge was sought to be imposed for the use of the same subsurface area for the year 1963. Confronted therewith, the Hotel Company sought relief by way of injunction and to secure a judicial declaration that the ordinances, Nos. 4355 and 4460, were, as to it and its use of the subsurface area for which the charge was sought to be made, wholly void and unconstitutional.

Holding for the Hotel Company, the trial court filed findings of fact and conclusions of law. As to the latter it held that the Hotel Company was the owner of the fee simple title to the middle of the streets adjacent to its property, subject only to an easement for street purposes in favor of the City of Fort Worth, as Trustee for the public; that the Hotel

Company could put its retained rights in the streets to any lawful use as long as such does not interfere with the dedicated public use, regulation and control of which was a right of the municipality; that the municipality has no legal authority to make a rental charge for the use of any estate in land which is owned by the Hotel Company, nor condition the use by the latter of the abutting subsurface area of the street upon the payment of a rental charge; that the municipality's ordinances (Nos. 4355 and 4460) were adopted as revenue producing measures and were and are unrelated to any licensing or police power, do not constitute a valid tax levy, occupation or otherwise, and the money provisions thereof do not represent an exercise of any of the regulatory powers of the municipality. Further, the court held that the language of the ordinances, and their enactment under the purported authority of Vernon's Ann.Tex.St. 1085b, "Private purposes, use of streets and sidewalks for", preclude any assertion by the City of Fort Worth that the use to which the property in question is being put presently interferes in any way with the proper enjoyment of the streets and sidewalks for purposes to which they may be put in the interest of the public,— and, as sought to be enforced against the Hotel Company, such ordinances were void, invalid and unconstitutional.

Generally interesting are the texts to be found in 37 Am.Jur., p. 746, et seq., "Municipal Corporations", Ch. VII, "Powers, Rights, and Functions", B, "As to Particular Matters", Sub. 2, "Engaging in Business Enterprises", § 132, "Generally",— and 38 Am.Jur., p. 168 et seq., "Municipal Corporations", Ch. XV, "Property", § 489, "(Alienation or Encumbrance) Lease". They do not deal with the specific problem, however.

 Although it did not seem to be truly a question in the court below, we are satisfied that when the Hotel Company proved its title to the property within its building lines, plus title emanating from a private individual in a deed where the description by metes and bounds of property thereby conveyed extended at least to the center of the abutting street or streets with which we are now concerned, and undoubtedly embracing the block and lots therein which abut upon said streets, it established by necessary legal presumption its fee ownership to the center of the streets. This was not rebutted. The trial court correctly held that such appellee was the freehold owner not only of the block and lots thereon where its building was located but of the street (to its center) itself, burdened by the easement rights of the municipality. As such an owner, the Hotel Company had an absolute property right therein without being subject to any rent. Town of Refugio v. Strauch, 1930 (Tex.Com.App.), 29 S.W.2d 1041. The discussion relative to a municipality's rights in the ordinary type of public street is to be found in City of Mission v. Popplewell, 1956, 156 Tex. 269, 294 S.W.2d 712. It has full application to the instant case, since the streets with which we are concerned are the type in which the City of Fort Worth has an easement only.

A series of cases decided October 28, 1910 by the Supreme Court of Illinois deal with practically every phase of the dispute in the instant case. An ordinance of the City of Chicago sought to impose a charge for rent against owners of property abutting upon streets of that city for underground use thereof made or to be made in connection with a subway project. The holding of the court in each case was that the ordinance was valid when applied to owners of lots located upon streets in which the city owned the fee, but was invalid and unenforceable as against the owners of lots abutting upon streets wherein the city had an easement only. See Tacoma Safety Deposit Co. v. City of Chicago, 247 Ill. 192, 93 N.E. 153; Sears v. City of Chicago, 247 Ill. 204, 93 N.E. 158; Ryerson v. City of Chicago, 247 Ill. 285, 93 N.E. 162; Williams v. City of Chicago, 277 Ill. 240, 93 N.E. 165; Sheldon v. City of Chicago, 247 Ill. 267,

93 N.E. 166; Illinois Trust & Savings Bank v. City of Chicago, 247 Ill. 264, 93 N.E. 167; Farwell v. City of Chicago, 247 Ill. 235, 93 N.E. 168; and Northwestern Safe & Trust Co. v. City of Chicago, 247 Ill. 238, 93 N.E. 169.

In the Tacoma Safety Deposit Co. case, supra, it was stated at page 155: "We think that the law is well settled that the owner of real estate, subject only to a public or private easement, has the right to use his property for any purpose which he may deem proper, so long as the use to which it is put does not interfere with the proper enjoyment of the easement which is held by the public or by a private person therein." It was further stated at page 157 of 93 N.E.: "To permit, however, such a structure to be erected in a street where the fee of the street rests in the abutting owner, and to require the abutting owner to pay rent for the use of such space, would be to impose an additional burden or servitude upon the fee, and would be unlawful. It is clear, therefore, to provide for the erection of a subway beneath the sidewalk and in a street adjoining the property of the abutter, where the fee in the street is in the abutter, and to require the owner of the fee to pay rent to the city for the use of his own property would be, in effect, to take from the owner his property without due process of law, or without paying him due compensation therefor, under the claim of regulating the use of the streets of the city, which would amount to an unlawful deprivation of the abutter's property, which the law would not permit."

Important of consideration is also the case of S. H. Kress & Co. v. City of Miami, 1919 (Florida Sup.Ct.), 78 Fla. 101, 82 So. 775, 7 A.L.R. 640, and the cases annotated beginning at 7 A.L.R. 646, "Right of abutting owner to permanent use of subsurface of street or highway".

That appellant, City of Fort Worth, has succeeded to the rights of the state, as sovereign, in that it is a Home Rule city, is of no consequence and affords no benefit as applied to the question in this case. There could never have been any right in the sovereign to exact a rental charge of the appellee Hotel Company for the use of its own property.

As applied to the Citizens Hotel Company relative to the use made and being exercised upon the subsurface areas of the streets upon which its property abuts, rights in which held by the City of Fort Worth are those of an easement only, the City's ordinances Nos. 4355 and 4460, and V.A.T.S. Art. 1085b, as sought to be enforced against the Hotel Company, are void as an attempt to deprive it of property without due process of law, in violation of Art. 1, § 17 of the Constitution of the State of Texas, and furthermore in violation of the 14th amendment to the Constitution of the United States. The trial court correctly so held and declared and granted its writ of injunction enjoining attempted enforcement of the ordinances.

Judgment is affirmed.