## Lamb *against* Lamb.

" When my land is sold, and the youngest child comes to full age, and each has received their share as above stated, and there is any yet remaining, it is my request that what remains shall be equally divided betwixt the surviving heirs:" *Held,* to be a contingent legacy, payable when his youngest child came of age, and to those residuary legatees only who survived at that period.

ERROR to the common pleas of *Centre* county.

David Lamb, James Brown and wife, and others, children of Samuel Lamb, deceased, against John Beck, executor of Samuel Lamb, deceased.

This was an amicable action, to determine the legal construction of the will of Samuel Lamb, in which the following case was stated.

On the 5th day of June 1819, Samuel Lamb, of Walker township, Centre county, Pennsylvania, made his last will and testament, and died on or about the 7th day of September 1819. He provided as follows, viz: " I give and bequeath to my daughter Mary, a feather bed and bedstead, and bedding, that which is commonly

[Lamb v. Lamb.]

called her own bed, together with her choice of the cows now belonging to me, and her own spinning wheel, and a large pine chest; and at the end of two years after the administration of this will, to receive the sum of twenty dollars, and the sum of twelve dollars, yearly, and every year, until my youngest surviving child comes of lawful age. To my daughter Margaret, or Peggy, I will and bequeath a feather bed and bedstead, and the bedding that belongs, commonly called her own bed, together with a cow, her choice after Mary has chosen, and her spinning wheel, together with twenty dollars, at the end of three years after the execution of this will. To my daughter Kitty King, I will and bequeath a bed and bedding, known by the name of my own bed, together with forty dollars in cash, at the end of six years as above. My daughter Nancy, married to William Moore, blacksmith, has received what makes her equal to my daughters above mentioned. If it is the will of God to remove me from this his footstool by this visitation, it is my will that my estate, real, personal and mixed, be put to sale as soon as it shall be thought best, and the proceeds thereof to be put to the best use, for the benefit of the children, when my lawful debts are all paid. My sons Manners, David, William, Samuel and John James, the two first mentioned is at the age to choose their own guardians and the trades they would like best. My three youngest sons, together with my daughter Hetty, to have guardians chosen for them, and to be taken care of in the best manner the executors can devise. I also will and devise that my eldest son Manners, when he arrives at the lawful age of twenty-one years, to receive the sum of one hundred and twenty dollars, if on hand, if not, as much as the executors thinks they can spare from the younger children. My other sons, as they come of age, to receive the same amount as Manners receives. My daughter Hetty, being of tender age, is to receive an equal share with my sons, when she comes of the age of eighteen. If any of the children should be removed by death, before they receive their shares of the above division, then, and in that case, an equal divide is to be made of their part amongst the surviving heirs, unless any of them have married and has children; in that case, their share to go to their own children. When my youngest child is come to full age, and each has received their share as above stated, and there is any yet remaining, it is my request that what remains shall be equally divided betwixt the surviving heirs." And appointed John Beck and William McKillen executors of his last will and testament, who, on the 7th of September 1819, took upon themselves the administration thereof. Mary Lamb, the eldest daughter, died on the 5th day of September 1820, under age, unmarried, and without issue. Peggy Lamb, the second daughter, died on the 17th day of June 1820, unmarried, and without issue. Nancy, the wife of William Moon, died on the 8th day of October 1820, leaving her husband, William Moore, who is yet in full life, and a daughter, surviving her. The daughter of

Nancy died in 1823, a minor, unmarried, and without issue. The youngest child of Samuel Lamb, the testator, John James, arrived at full age on the 14th day of February A. D. 1838. The executors of the last will and testament of the said Samuel Lamb, in the month of October 1830, sold the real estate of the said Samuel Lamb, in pursuance of the authority vested in them by the will; and the defendant, the surviving executor, has in his hands four hundred and eleven dollars and thirty-eight cents, being the one-seventh of the net proceeds of the purchase-money of the real estate.

The question for the opinion of the court is, whether the plaintiffs, are entitled to recover from the defendant, the surviving executor, the said sum of four hundred and eleven dollars and thirty-eight cents; if the court should be of opinion that he is, then judgment to be entered for the plaintiffs for the said sum of four hundred and eleven dollars and thirty-eight cents, from which the costs of this action are to be taken. If the court should be of opinion that he is not, then judgment to be entered generally for the defendant.

The court below gave judgment for the defendant, which was in favour of the husband of Nancy Moore, deceased.

*M'Allister*, for plaintiff in error, cited 12 *Vez.* 95; 1 *Roper on Leg.* 378, 403.

*M'Manus* and *Blanchard*, for defendant in error, cited 6 *Bin.* 422.

The opinion of the Court was delivered by

HUSTON, J.—The chancery books are full of very nice distinctions, as to what words give a vested legacy; and the amount of the whole seems to be, that scarcely any form of expression can be used on which alone reliance can be placed. The whole will is to be taken into consideration, and the intention of the testator is to be gathered from it; and if that can be discovered, every rule of construction is to give way to it. The intention governs, unless it contradicts some better doctrine of the law.

One of the rules is, that where there is no substantive gift of the legacy until the time when it is payable, it does not vest until then. Here the only matter in dispute is the residue after the payment of debts, and certain provisions for, or legacies to, each of his children. These provisions are in amount or time of payment, or both, different to each child. When his land is sold and " the youngest child comes to full age, and each has received their share as above stated, and there is any yet remaining, it is my request that what remains shall be equally divided betwixt the surviving heirs." It is this residue alone which is in dispute—we must decide how it is to go; and it is neither mentioned nor alluded to until it is, by this sen-

[Lamb v. Lamb.]

tence, given to the surviving heirs.   It is not a gift, and a time for payment afterwards; it is not given until the time of payment.

The provision for his family, at the discretion of his executors, and the payment of the legacies to the sons, if so much could be spared from the younger children, are only directions as to the income or interest.   That income or interest is given to be used for all the minors living at the time.   The residue is given to the survivors, when all previous legacies are paid and the youngest son is of age. See 12 *Vezey* 75; 1 *Roper on Legacies* 378.

I am aware that when a legacy is given in words which would appear to make it contingent, yet if the interest is given to support the legatee, it has, in some cases, been held a vested legacy.   The words of the will may, however, prevent this.   See 1 *Roper* 397, 3 *Atk.* 319; 3 *Bro. Parl.* 365, 373, and the cases there cited.

There is, however, a class of cases which come under another division.   I mean as to the vesting and divesting of legacies, where there is a limitation over on a particular event.

It is settled, a legacy may be given absolutely, or on a contingency within a limited time; and where, from the words of bequest, it would be called a vested legacy, it is said to divest on the contingency which carries it over to another.   The plain meaning of this clause is, that if all his children are living when the youngest child comes of age, the residue is to be divided among all; if any are dead, their proportions are given to those who at that time are living; it is to be equally divided among his surviving heirs.   See 1 *Roper* 403 *et seq.*

Here is no uncertainty, and no doubt can be raised.   Particular legacies had been given to each child; these were to be paid before the last clause took effect.   And if any had died before his youngest son came of age, provision is made for that case; he had in the very previous sentence contemplated the death of some; in the last sentence he gives the residue to his then surviving heirs.

Judgment reversed, and judgment for plaintiff.