ALINA OWEN, Executor, Respondent, v. MARY EATON *et al*, Appellant.

56 563
d102 ¹454

Kansas City Court of Appeals, February 19, 1894.

1. **Wills:** REMAINDER, VESTED OR CONTINGENT. A bequest in the following words was *held* to be contingent remainder, viz: "*Item third.* —I also give and bequeath to my son, Lanson Eaton, all of my money, notes and stock, except said cow to my wife, after my debts and funeral expenses are paid, except the sum of $2500 to be paid over to my executor hereinafter named; and it is my will that said executor shall loan said sum, $2500, out at the highest legal rate of interest, and out of said interest, pay my wife Mary said $175 so long as she may live, annually, and at the decease of my wife then said $2500 to be paid over to my son Lanson Eaton, or his heirs if he should not be alive.

2. **The Bequest** did not create a vested remainder in the son since it depended not upon a certain event, towit, the death of his mother, but upon an uncertain event, towit, that the son should be alive at the death of his mother.

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED (*with directions*).

*John A. Sea* for appellant.

(1) The controlling guide in construing a will is to ascertain the intention of the testator, which intention

must be gathered from the "four corners" of the instrument. *Turner v. Timberlake*, 53 Mo. 371; *Allison v. Cheney*, 63 Mo. 279; *Reinders v. Koppelman*, 94 Mo. 338; *Peters v. Carr*, 16 Mo. 56; *Chew v. Keller*, 100 Mo. 362; *Noe v. Kern*, 93 Mo. 367; *Snydam v. Shayer*, 94 Mo. 49; 2 Jarman on Wills, 154; *Peak v. Jameson*, 6 Mo. App. 590; *Schumacher's Estate v. Reel*, 61 Mo. 592; Perry on Trusts [4 Ed.], p. 351. (2) A vested remainder, or estate, in Lanson Eaton would ignore the use of word "except" after words "give and bequeath"; would throw out words "if he be not alive," and would violate rule in *Turner v. Timberlake*, 53 Mo. 371; *Allison v. Cheney*, 63 Mo. 279; *Roberts v. Brinks*, 4 Dana, 570; *Combs v. Branch*, 4 Dana, 548; *Bowman's Appeal*, 34 Pa. St. 19, 22, 23; *Lamb v. Lamb*, 8 Watts, 184; *Moore v. Smith*, 9 Watts, 417; *Gifford v. Thorn*, 9 N. J. Eq. 702; *Willett v. Rutter*, 84 Ky. 317; *Major v. Major*, 32 Gratt. 819– 823; *Nixon v. Robbins*, 34 Ga. 6; *Giles v. French*, 2 Dev. Eq. 521; *Smith v. Denney*, 37 Mo. 20; *Beraft v. Lewis*, 41 Mo. App. 546–552; *Hanson v. Graham* 6 Vesey, 243; 2 Jarman on Wills [Randolph & Talcot Ed.], sec. 6, p. 453. *Emerson et al. v. Whittlesey et al.*, 55 Mo. 254–258; *Rodney v. Landon*, 104 Mo. 257, 258; *DeLassus v. Gatewood*, 71 Mo. 371– 378.

*John N. Southern* and *John W. Clements* for respondent.

(1) The intention of the testator is to be gathered not from single words, sentences or paragraphs, but from the whole instrument. Schouler on Wills, sec. 476; 3 Jarman on Wills, p. 705; *Carber v. Alexander*, 71 Mo. 585; *Russel v. Eubank*, 84 Mo. 86; *Munn v. Collins*, 95 Mo. 37. (2) The word heirs is uniformly a word of limitation and not a word of purchase, unless

other phraseology of the will clearly shows that it is intended to designate a new class of beneficiaries. Schouler on Wills, sec. 485; *Chew v. Keller*, 100 Mo. 369; 2 Wash. Real Prop. [5 Ed.], p. 654; *Landon v. Moore*, 45 Conn. 422; *Thurber v. Chambers*, 66 N. Y. 42; *Linton v. Laycock*, 33 Ohio St. 394. (3) The word heirs, when uncontrolled by the expressed intention of the testator, has the effect to vest a legacy which would otherwise be contingent. *Chasey v. Gowdry*, 9 Atl. Rep., 580; *Harris et al. v. Carpenter*, 10 Atl. Rep. 422; *Little's Appeal*, 11 Atl. Rep. (Pa.) 520; *Mull's Ex'r v. Mull's Adm'rs*, 81 Pa. St. 393; *Patterson v. Hawthorne*, 12 Serg. & R. 112; *In Re Jennings*, 1 N.Y. L. 565; *Reed's Appeal*, 11 Atl. Rep. 787; *King v. King*, 37 Am. Dec. 459. (4) The law favors vested estates. *Jones v. Waters et al.*, 17 Mo. 587; *Collier v. Keller*, 100 Mo. 369; *King v. King*, 1 Watts & S. 205; *McClure's Appeal*, 72 Pa. St. 414; *Little's Appeal*, 11 Alt. Rep. 527; *King v. Isaacson*, 1 Smale & Giffords, p. 371; *Smith v. Palmer* 7 Hare, p. 225; 2 Williams' Executors, 1344; 2 Jarman on Wills, p. 450; *Appeal of Reed*, 11 Atl. Rep. 788; *Heilman v. Heilman*, 28 N. E. Rep. 310; *Leeming v. Sherratt*, 2 Hare, 14; 2 Redfield, Wills, 237; 2 Williams on Executors, p. 1344.

ELLISON, J.—This case involves the construction of the will of William Eaton, deceased, and was instituted by the executor, as stated by the parties, for the purpose of obtaining a judicial construction thereof, the matter of contention relating, principally, to the third clause, which is as follows: "*Item third.*—I also give and bequeath to my son Lanson Eaton all of my money, notes and stock, except said cow to my wife, after my debts and funeral expenses are paid, except the sum of $2,500 to be paid over to my executor hereinafter named; and it is my will that

said executor shall loan said sum, $2,500, out at the highest legal rate of interest, and out of said interest pay my wife, Mary, said $175 so long as she may live, annually, and at the decease of my wife then said $2,500 to be paid over to my son, Lanson Eaton, or his heirs if he should not be alive." The point of dispute is whether Lanson Eaton took a vested interest in the $2,500, upon the death of his father, or whether such interest was contingent; that is to say, dependent upon his being alive at the death of his mother. Lanson Eaton died during the life of his mother.

It is clear that the $2,500, was not bequeathed to Lanson in the first portion of the paragraph, for it is expressly excepted from the other bequest to him. The question, then, in one respect, may be somewhat simplified by eliminating the first clause of the paragraph and looking upon the second clause as an independent provision. This may properly be done for the purpose of simplifying, since the two clauses have no necessary connection, and have no dependence one upon the other; at least not more than if they were in separate divisions of the will. If separated, the last clause would read that "it is my will that said executor shall loan said sum, $2,500, out at the highest legal rate of interest, and out of said interest pay my wife Mary, said $175 so long as she may live, annually, and at the decease of my wife then said $2,500 to be paid over to my son Lanson Eaton, or his heirs if he should not be alive."

It is thus made apparent that the only words importing a gift or bequest to Lanson of this $2,500 are the following: "At the decease of my wife then said $2,500 is to be paid over to my son Lanson Eaton, or his heirs if he should not be alive." This is the first intimation that Lanson was to have that sum, under any circumstances or conditions. It thus

quite clearly appears that the gift and the payment became operative, if at all, at one and the same time—indeed, the only words of bequest he has, are those implied in the direction to pay. There are no words then which bequeath to him an interest, except upon the contingency that he be alive at the time of his mother's death, the effect of which was to give him a contingent remainder, as we shall attempt to make apparent in the course of this opinion.

If a testator, after giving his wife a life estate, proceeds to direct that "and after her death to descend to her children by me, living at her death" the remainder, thus created, is contingent upon the children being alive at the wife's death. *Rodney v. Landau*, 104 Mo. 258. These definitions of a contingent remainder are cited with approval in *DeLassus v. Gatewood*, 71 Mo. 376: "A remainder is contingent, whilst the person to whom, or the event upon which it is limited to take effect remains uncertain." And "where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event." In the case at bar, the remainder is limited to take effect upon the uncertain event of Lanson Eaton being alive at the time of the expiration of the life estate. In *Thompson v. Ludington* 104 Mass. 193, Judge GRAY said: "The devise at the death or marriage of the widow 'to and among such of my children as shall then be living, share and share alike,' gives a contingent remainder to such of the children as shall be living when the contingency of such death or marriage happens." So, the same thing was decided in *Olney v. Hull*, 21 Pick. 311. In that case, after bequeathing the intervening estate, the devising clause read: "Should my wife marry or die, the land then shall be equally divided among my surviving sons." On this it was held that a son who died during the

life of the mother, had taken no interest.

But there is another view of the provision of this will which goes far to relieve its construction of difficulty. By omitting all expression of bequest except that contained in the direction to pay, the testator has, himself, explained his intention by fixing a contingency upon which the payment is to be made, to-wit: "if" his son should be alive. It is, therefore, one of the settled rules concerning bequests of personal property, that, where there is no substantive gift of the legacy until the time when it is payable, it does not vest until then, unless perhaps, such time must *inevitably* arrive. In such case there is no gift until payment. It is not a gift *in præsenti* with a time fixed for payment afterwards. *Lamb v. Lamb*, 8 Watts, 184. The rule is stated in *Moore v. Smith*, 9 Watts, 403, and in *Bowman's Appeal*, 34 Pa. St. 19, that where there is no antecedent gift or bequest independent of the period fixed for payment, then it is not vested, but contingent. In the latter case the bequest was, "to my three grandchildren, Elizabeth, William Wesley, and Martha Bear, the children of my daughter, Martha, deceased, the further sum of $400 each, to be paid to them respectively when they severally arrive at the age of twenty-one years, making the sum of $1,200." There the gift of $400 each, is definitely made, and then a time is fixed for its payment, making "a clear case of a vested legacy." The gift is made *in præsenti* and becomes vested on the testator's death, notwithstanding that its payment is to be in the future. But if there is no gift or bequest preceding the direction of payment, and the direction of payment is *dependent upon a contingency*, then the legacy is contingent and not vested until the contingency ripens into a fact. In the present case, as we have before observed, the only bequest is that contained in the direction to

pay, which is made to depend upon whether the legatee be alive. In such case, the legacy is contingent. *Willetts v. Rutter*, 84 Ky. 317; *Nixon v. Robins*, 34 Ga. 6. The rule is clearly and aptly stated by Justice GREEN in *Gifford v. Thorn* 1 Stockton 702, as follows: "The general rule applicable to this question, adopted both in the ecclesiastical courts and courts of equity, is well settled. Where the time specified in the bequest is annexed to the payment only, as where the legacy is given, payable or to be paid when the legatee attains the age of twenty-one years, the legacy vests immediately upon the death of the testator. It is a present gift. The time of payment only is postponed. But where the time is annexed not to the payment only, but to the gift itself, as when the legacy is given to the legatee at twenty-one, or 'if' or 'when' he attains the age of twenty-one, the legacy does not vest until the legatee attains that age. The gift is upon the condition that the legatee shall attain the age specified. His attaining that age is a condition precedent; and if the condition be not fulfilled, the legacy never vests. The cases upon this subject are very numerous, and with few exceptions the rule will be found to have been for more than a century inflexibly maintained."

Keeping in mind that we are dealing with a bequest of personalty and not a devise of real estate, *Lynton v. Laycock*, 33 Ohio St. 137; *Kinsey v. Lardner*, 15 S. & R. 192, we find that tested by any of the rules to which we have referred, the provision of the will must be held to have given to Lanson Eaton a contingent interest only; that having died before the life estate was ended, all possibility of interest in him ceased, and under the directions of the testator the sum of money indicated should be paid to his heirs upon the death of the wife.

We have not been unmindful that the dominant rule of construction of wills is the intention of the testator to be gathered from the whole instrument. In examining this will, as an entirety, we find nothing betraying any intention to prevent the particular clause in question from having a construction in keeping with the plain and ordinary meaning of the language used therein.

We will refer to some of the contentions on the part of respondents. In our opinion, counsel have confounded the nature of this bequest as well as the language used in making it. The gift is not made to depend upon the happening of the death of the mother, an event certain, but it is made to depend upon the contingency of *the life* of the legatee at the death of his mother, an event *uncertain*. Again, we are cited to the interesting and able opinion of Judge BLACK in *Chew v. Keller*, 100 Mo. 368, wherein he correctly announces that, "it is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder." We do not regard that proposition as it seems to be interpreted by counsel. That statement is this: that if the life estate should become vacant there must be, at the time the vacancy occurs, a then "present capacity" of taking the estate in remainder. The capacity of Lanson Eaton to take possession of the remainder at the first moment of vacancy was dependent upon the contingency of his being alive at such time, thus being made to depend "upon a dubious and uncertain event," which BLACKSTONE says determines the remainder to be contingent. A gift made to take effect on a contingency will not arise unless the contingency happens. Schouler on

Wills, 562.    The quotation from *Chew v. Keller* would
find a better application if the testator had devised the
remainder to Lanson Eaton, merely, without adding
the condition, if he be alive.    If we are right in this,
we dispose of the position taken by respondents, viz;
that since the enjoyment of the entire fund is fixed at
successive periods "which must eventually arrive" the
distinction between time annexed to the gift and time
annexed to the payment becomes unimportant.    For
here again the error lies in absolutely fixing the time of
his mother's death as the time of Lanson's enjoyment
of the estate, since the testator has made that depen-
dent upon whether he be alive at that time.    The time
of the death of the mother *"must* eventually arrive,'' it
is true.    But the gift, as such, has reference to Lan-
son's being alive at the time fixed when he may enjoy
it—a matter uncertain.    Neither Lanson Eaton nor his
heirs (claiming by descent) have any right to the money
upon the death of the mother, by reason of the gift, as
a gift.    It was no gift to Lanson or his heirs (claiming
by descent) unless he was alive at the time fixed for his
enjoyment of the gift.    This fastening onto the time of
the enjoyment by some person and assuming it to be
the time of the gift, and deducing therefrom that since
that time must certainly arrive, the gift was vested, is
again seen in the reliance which respondents place on
certain authorities.    Thus, in *McClures Appeal*, 72 Pa.
St. 414—a case which we think sustains the position
we take in this opinion—there is found a statement that
"a devise or legacy depending upon an event that is
sure to happen is vested if the happening of the event
*does not form a* part of the description of the devisee.''
(Italics ours.)    Respondent would, doubtless, in making
application of that case, interpret the event referred to
as being the death of the mother, whereas the event, to
repeat again, is the continued life of the son, his being

alive is a part of the description of the legatee.  See, also, *Letchworth's Appeal*, 6 Casey, 179.  So almost the entire scope of respondent's contention has for its foundation the certainty of the death of the mother, instead of the uncertainty of the life of the son.  The contention involves the necessity of bodily eliminating from the will that portion which limits the gift, and substituting therefor that portion which relates only to the enjoyment of the estate by the legatee (whoever he, or they may be) who may have the then present capacity at the first vacancy of the life estate, to enter upon its enjoyment.

Respondents' endeavor to sustain their case by invoking the rule that the words "heirs," or "his heirs" will be construed as words of limitation and not of purchase.  Where the devise or bequest is to A and his heirs, or, to A, his heirs and assigns, these are words of limitation merely, the fee is thus placed in A, the other words being unnecessary (section 8912, Revised Statutes, 1889), yet not inappropriate.  But to be words of limitation there must be a devisee or legatee, to whom the limitation can certainly apply.  In the case before us, Lanson Eaton is not a certain legatee since his being such was contingent upon an uncertain event, viz, his being alive.  A bequest to A, if he be alive at a certain period, if not, then to his heirs, is quite a different matter from a bequest to A and his heirs.  So, I may add by way of illustration, the rule in *Shelly's case* being abolished in this state, that where an estate is devised or bequeathed to A for his life and to his heirs after his death, that there, "heirs" is not a word of limitation but of purchase; and A will take a life estate with remainder to his heirs. *Riggins v. McClellan*, 28 Mo. 23; *Tesson v. Newman*, 62 Mo. 198.

The circumstance that Lanson Eaton was the

ancestor of the heirs mentioned in this bequest can not overturn the plain meaning of the language used in making it. The bequest is just as much a substantive gift to the heirs if Lanson be not alive at the death of his mother, as if the gift had been made to them upon the contingency of the life of any other person. By his death Lanson was as much eliminated from the contemplation of this provision as if the bequest had been, in the first place, to the heirs of Lanson Eaton upon the expiration of the life interest; in which event they would have taken as purchasers beyond question. 2 Washburn on Real Property; side page, 270.

The judgment will be reversed and cause remanded with directions that the circuit court enter judgment as herein indicated. The other judges concur.