# CHARLESTON.

LYNCH et al. v. TOWN OF NORTH VIEW et al.

Submitted January 20, 1914.   Decided February 3, 1914.

1. MUNICIPAL CORPORATIONS—*Ordinances—Requisites—Arbitrary Power.*

   Municipal ordinances, placing restrictions upon lawful conduct or the lawful use of property, must specify the rules and conditions to be observed in such conduct or business, and must admit of the exercise of the privilege by all citizens alike who comply with the rules and conditions. (p. 612).

2. SAME—*Ordinances—Validity—Arbitrary Power.*

   A municipal ordinance making it unlawful to dig in the streets for the purpose of laying gas pipes, "without the consent of the council of the town entered upon the record of said town," is void, for the reason that it vests the council with arbitrary power to discriminate between citizens who may wish to obtain the privilege. (p. 611).

3. SAME—*Streets—Owner of Fee—Use of Subsurface.*

   The owner of the fee has a right to use the subsurface of a public street, subject to the superior right of easement therein in favor of the municipality for water, gas and sewer mains, etc., provided he does not materially interfere with travel on the surface. (p. 615).

4. SAME—*Streets—Use of Subsurface—Obstruction.*

   In the absence of a municipal ordinance prescribing any rules or regulations governing the conduct of citizens in making excavations in the street, it is not unlawful for the owner of the fee to dig a ditch and lay a gas pipe line thereunder, provided he leaves the surface in as good condition as he found it and does not materially interrupt travel thereon. Such temporary and partial obstruction is not *per se* a nuisance. (p. 614).

5. SAME—*Streets—Use of Subsurface—Injunction.*

   A municipality which has not present need to occupy the subsurface of a street for its own purposes, can not enjoin the owner of the fee therein from making lawful use of it for his own private purpose. (p. 618).

   (LYNCH, JUDGE, absent.)

   (ROBINSON, JUDGE, dissents.)

Appeal from Circuit Court, Harrison County.

Action by Van Linden S. Lynch and others against the Town of North View and others.   From the judgment, plaintiffs appeal.

*Reversed and Remanded.*

*H. C. Batten,* and *Chas. E. Hogg* and *Chas. J. Hogg,* for appellants.

*Davis, Swartz & Templeman,* for appellees.

WILLIAMS, JUDGE:

Plaintiffs have appealed from a vacation order made by the judge of the circuit court of Harrison county on the 29th of October, 1911, dissolving a temporary injunction previously awarded restraining the town of North View from interfering with the laying of a gas pipe line by plaintiffs in one of its public streets. The town is situated in gas producing region; and, within its corporate limits, there are about fifteen wells, some of which were drilled before and some after, the town was incorporated, which was done, pursuant to chapter 47 of the Code, by order of the circuit court of Harrison county made on the 20th of February, 1911. Plaintiffs obtained an oil and gas lease from the owners of lots 5 and 6 in said town, and proceeded to drill wells thereon, without having obtained permission from the municipal authorities; and, acting under a municipal ordinance, passed on the 4th of April, 1911, the mayor and council tore up the pipes which had been laid to conduct the fuel to the engine used to operate the drill. Thereupon plaintiffs applied to the court and obtained an injunction restraining the town authorities from interfering with the drilling of the well until the further order of the court. That proceeding is still pending. Plaintiffs completed their wells and discovered gas and made sale thereof to the Philadelphia Company, agreeing to deliver it into said company's receiving line which ran not far from the wells. But in order to make delivery, it was necessary to cross one of the public streets with their pipe line; and when they began digging a ditch in the street, preparatory to laying their pipe line, they were arrested by the town authorities. They thereupon, the circuit court of Harrison county being in vacation, applied to a judge of an adjoining circuit and procured an injunction restraining any interference with the laying of their line in the street. On the 29th of October, 1911, in vacation, the judge of the circuit court of Harrison

county dissolved the injunction on the motion of defendant; and from that order plaintiffs have appealed.

It appears that the municipal authorities have allowed other owners of gas wells within the town to use its streets to lay pipe lines, but upon what conditions and subject to what regulations, if any, or whether any license fee was charged for the privilege, it does not appear. The town authorities seek to justify their conduct on the ground that plaintiffs ignored their authority and refused to treat with a committee of their members, which had been appointed to negotiate terms and conditions concerning the privilege. Plaintiffs aver that defendants sought to charge them $500 for the privilege. This averment, however, is denied in the answer; but the answer admits that the town council did, at one time, demand a fee of $500 each for drilling wells within the town. Defendants deny that they sought to charge plaintiffs any sum whatever for the privilege of laying their pipe line, and aver that they signified their willingness to V. S. Lynch, one of the plaintiffs, "to permit the laying of pipe lines in the public streets under such conditions and regulations as the council of the said town shall deem proper." They further aver that a committee was appointed to deal with said Lynch concerning the granting of such permission, and that he refused and openly stated in the presence of the council that he would pay no sum of money for the privilege and that he would lay his pipe in the street without their permission.

The charter powers of the town are contained in chapter 47 of the Code; and section 28 of that chapter contains the following provision with regard to its control over and its right to regulate the use of the streets, viz.: "The council of such city, town or village, shall have plenary power and authority therein, to lay off, vacate, enclose, open, alter, curb, pave, and keep in good repair, roads, streets, alleys, sidewalks, cross walks, drains and gutters for the use of the public, or any of the citizens thereof, and to improve and light the same, and have them kept free from obstruction on or over them." Pursuant to the foregoing charter provision, there can be no doubt of the right of the municipal council to pass ordinances establishing reasonable rules and regulations governing the

citizens and the public generally in the use of the streets.    On
the 4th of April, 1911, the council passed the following ordi-
nance, viz.:   "It shall be unlawful for any person to dig out
or excavate in any street, alley or road of the Town of North
View, or to remove any soil or other thing from said street,
alley or road for setting of telegraph telephone or other poles
and posts, or laying gas mains, or for doing any other thing,
without the consent of the Council of the Town entered upon
the record of said Town.    And in case such consent or permit
is granted by the council aforesaid, it shall be unlawful for
any person obtaining such permit to neglect or fail to repair
such street, alley or road aforesaid in such manner as to leave
it in as good and permanent condition as the same was before
such digging, or cutting, excavating or removing soil or other
thing.    It shall be unlawful for any person to take and carry
away or destroy, injure or deface any property in said Town,
real or personal, not his own."

Counsel for plaintiffs insist that the ordinance is void for
the reason that it prescribes no uniform rule for the regulation
of the conduct of all citizens alike, but leaves it within the
arbitrary discretion of the council to grant permission to one
and to withhold it from another, at its pleasure.    The point is
well taken.    The rule, as stated in Smith on The Mod. Law
of Munic. Corp., Vol. 1, sec. 530, is as follows:   "Ordinances
which invest a city council, or a board of trustees, or officers,
with a discretion which is purely arbitrary, and which may
be exercised in the interest of a favored few, are unreasonable
and invalid."    This court held, in Town of Fulton v. Norte-
man, 60 W. Va. 562, an ordinance invalid, which made it un-
lawful to bring into the town the carcasses of animals, or any
portions thereof, intended for burial, cremation or the manu-
facture into fertilizer of any kind, but which did not make it
unlawful to bring in such carcasses for other purposes, and
which did not make it unlawful to manufacture fertilizer
within the town from the offals of animals slaughtered therein.
The ordinance was held to be an unwarranted discrimination
in restraint of trade.

"An ordinance which invests the mayor and council with
arbitrary power to grant or withhold a permit to keep domestic

73 W. Va.

animals within the city limits is unreasonable and void.''
*Hagerstown* v. *B. & O. R. R. Co.,* 107 Md. 178, 68 Atl. 490,
126 Am. St. Rep. 382.

In *Village of Little Chute* v. *Van Camp,* 136 Wis. 526, 117
N. W. 1012, 128 Am. St. Rep. 1100, a town ordinance requir-
ing saloons to be closed at a certain hour, ''unless by special
permission of the president,'' was held to be void, both be-
cause it attempted to delegate legislative authority to an
executive officer and also because it gave him arbitrary power
to discriminate among persons similarly situated. The
supreme court of Indiana in *City of Richmond* v. *Dudley,*
129 Ind. 112, likewise held void an ordinance which made it
unlawful to keep certain inflammable or explosive oils within
the limits of the town, but which reserved to the common
council the right to grant permission to keep them in such
locations and buildings and to such persons as it thought
proper with the right to revoke such permission at any time.
The ordinance gave the council arbitrary control over the
business without any fixed rules. For the same reason, an
ordinance which permitted the body of aldermen to grant or
refuse building permits within a fire district were held invalid,
by the supreme court of Massachusetts, in *City of Newton* v.
*Belger,* 143 Mass. 598.

''An ordinance which invests a city council or board of
trustees with a discretion which is purely arbitrary, and which
may be exercised in the interests of a favored few, is un-
reasonable and void,'' says the supreme court of Alabama in
*City Council* v. *Montgomery,* 149 Ala. 311, 42 Sou. 1000.

In *Barthet* v. *City of New Orleans,* 24 Fed. 563, an ordin-
ance making it unlawful to maintain a slaughter house,
''except permission be granted by the council of the city of
New Orleans,'' was held to be void. Likewise an ordinance of
the City of New Orleans forbidding the keeping of dairies with-
in certain limits, except by permission of the city council, was
held null and void. *State* v. *Mahner,* 43 La. 496.

From the foregoing authorities the rule seems to be that,
to make valid a city ordinance placing restrictions upon lawful
conduct or the lawful use of property, it must specify the rules
and conditions to be observed in such conduct or business,

and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions. It should not admit of an opportunity for the exercise of arbitrary discrimination by the municipal authorities between citizens similarly situated. "Notwithstanding express power may exist to enact, the ordinance must provide a uniform rule of action; it must contain permanent legal provisions, operating generally and impartially, for its enforcement cannot be left to the will or unregulated discretion of the municipal authorities or any officer of the corporation." McQuillan on Munic. Corp., sec. 728. See also, *Yick Wo* v. *Hopkins, Sheriff*, 118 U. S. 356; *Sayreborough* v. *Phillips,* 148 Pa. St. 482.

The streets were laid out by the landowner and presumably dedicated to the public when the tract of land on which the town is located was laid off in lots. As thus designated on the plat they were adopted by the town council, as the public streets of the town, by ordinance passed 19th of April, 1911. The street in question was not graded or paved, and plaintiffs proposed to lay their pipe line under the surface and fill the ditch, as the work progressed, so that it would furnish no unreasonable obstruction to travel. The work would require but an hour or two, and after it was completed, it appears that the pipe line would not, in the least degree, interfere with the use of the surface by the traveling public. Defendants admit in their answer that they have granted permission to occupy the streets with pipe lines to two other persons who, they say, made due compensation and submitted to municipal regulation and control. It thus appears that defendants are not objecting to the occupation of the street with plaintiff's pipe line, on the ground that it is, *per se*, a nuisance or an unlawful use of the highway, but are objecting on the sole ground that plaintiffs refused to comply with the municipal ordinance. But we have decided the ordinance to be void, and, therefore, plaintiffs were not required to comply with it. The question then arises, are plaintiffs making an unlawful use of the street, and is the pipe line a public nusiance which the municipal authorities may abate independent of an ordinance on the subject? If so, the injunction was properly

dissolved.   The town has only an easement in the streets; it does not own the fee.   Its easement, however, is not confined to the surface; it has also an easement in the subsurface for the purpose of laying water, gas and sewer pipes, etc., which is superior to the rights of the owner of the fee therein.   But, until it becomes necessary to use its easement for such purposes, the owner of the fee may make any use of the subsurface which does not interfere with the public's use of the surface. The fee, in the present case, belongs either to the abutting owners or to the original owner of the land before it was laid out in lots and the streets dedicated to public use, presumably to the former, at least to the center of the street.   *Foley* v. *County Court,* 54 W. Va. 296; *Hedges* v. *Seaboard etc. R. R. Co.,* 88 Va. 653; *Henrich* v. *City of St. Louis,* 46 Am. St. Rep. 495; *Banks* v. *Ogden,* 69 U. S. 57, 17 Law Ed. 818; *White* v. *Northwestern etc. Ry. Co.,* 113 N. C. 610, 37 Am. St. Rep. 639; 3 Kent's Com. (14th ed.), p. 432.

"The owner of property abutting on a public street in a city, in the absence of statutory provisions to the contrary at the time of the dedication, or of a different intention appearing from the instrument or act of dedication, owns the fee in the land to the center of such street subject to the public easement."   *Telephone Co.* v. *Francis,* 109 Ala. 224, 55 Am. St. Rep. 930.

But for the purposes of this case it matters not whether the fee is in the abutting lot owners or the dedicator of the streets, for none of them are objecting to plaintiffs' use of the subsurface.

A town, incorporated under chapter 47, Code. can not grant the right to occupy its streets permanently for a private purpose; such an act would be clearly *ultra vires.*   But it may, under proper regulations, permit a temporary obstruction thereof, in the interest of a private property owner.   The owner of the fee has a right to use the subsurface of the street, provided he does not materially interfere with the public's use of the surface, subject, of course, to the easement therein of the municipality for laying water and sewer pipes, etc. But in order to get at the subsurface it is necessary to dig up some part of the surface, and thereby create a temporary ob-

struction. Such temporary obstruction, if not unreasonable, is not unlawful. It appears, in this case, that the obstruction would not continue for more than an hour or two; that the work could be done in such a way as not to interfere materially with public travel; and that by laying short sections of pipe and covering the ditch as each section is laid, the highway could be kept continually open for travel. Under its charter power to regulate the use of its streets, the town of North View could, by a proper ordinance, have permitted such temporary occupation of its streets; and in the absence of such an ordinance, such temporary obstruction was not unlawful.

"It is apparent that the right of an abutter to encroach on the street below the surface is greater than his right so to do on the surface of the street. Ordinarily excavations under a sidewalk and street, if properly protected do no harm, nor do they conflict with any right of the public below the surface, if they do not interfere with sewer pipes and the like. However, the public easement includes the use of the land below the surface of the street as well as the use of the surface, and any subsurface use of the street by an abutter must not trespass on the rights of the public." 3 McQuillan on Munic. Corp., sec. 1343.

"The owner of land over which a highway is laid has a right to excavate under the sidewalk, if he thereby violates no ordinance or regulation of the city, or interferes with no existing public use of the street." Allen v. Boston, 159 Mass. 324.

"Excavations, properly and safely constructed under the public streets in cities, for the convenience of the owners or premises adjoining, are not unlawful; and they are not liable to be treated as nuisances if kept in repair, and the use of the street is not interrupted for an unreasonable length of time." Torrent v. The Muskegon Booming Co., 21 Mich. 1.

In Gordon v. Peltzer, 56 Mo. App. 569, it was held that an abutting owner had the right, without legislative permission from the municipality, to construct a vault under and a coal hole in the sidewalk in front of his property, provided he left the sidewalk in such condition as to make it reasonably

safe for ordinary travel, and did not otherwise disturb the rights of the public.

In *Adams* v. *Fletcher,* (R. I.) 20• Atl. 263, which was an action to recover damages from an abutting owner, brought by a pedestrian who had fallen into a coal hole in the sidewalk which had been negligently left open by a tenant of the owner, the vault and the coal hole appear to have been made without any license or permit from the town, but appear to have been constructed in a reasonably safe manner and kept in good repair. At the time the vault was constructed there was no municipal ordinance on the subject. The court dismissed plaintiff's suit on the ground that there was no liability on the owner, holding "that the want of a special license or authority to construct and maintain the coal hole in question did not constitute it a nusiance."

In *Colegrove Water Co.* v. *Hollywood,* (Cal.) 90 Pac. 1053, 13 L. R. A. (N. S.) 904, it was held: "The owner of the fee of a city street has the right to lay a water pipe for his own use beneath the surface so far as he can do so without impeding the public use, and, for that purpose, may excavate the soil, subject to such restrictions by the municipality as will insure the least interruption to the public easement." The editor of L. R. A., in a note to this case, at page 905 says: "It is a rule very generally followed by all of the cases that, where the ownership of the fee is in the abutting owner, or in any one other than the public, the public itself has but a mere easement, and cannot prevent the use of the property under the surface by the owner of the fee. And even a mere temporary inconvenience to the public, such as a partial and temporary obstruction of the highway, by the owner of the fee, has been held not to be such a wrong to the public as may be prevented by injunction."

In *Mayor etc. Borough of Brigantine* v. *Holland Trust Co.,* (N. J.) 37 Atl. 438, it was held that, "Water pipes laid under the street are not such an obstruction of the public easement therein as authorizes the municipality, under its general control of the streets, to compel their removal by mandatory injunction." And to the same effect as the foregoing are the following authorities: *Perly* v. *Chandler,* 6 Mass, 454, 4 Am.

Dec. 159; *Woodring* v. *Forks Township,* 28 Pa. 355, 70 Am. Dec. 134; *Clark* v. *Fry,* 8 Ohio St. 358; *Ellsworth* v. *Lord,* 40 Minn. 337, 42 N. W. 389; *Bayonne* v. *Borough of North Arlington,* 77 N. J. Eq. 166; *Sears* v. *City of Chicago,* 247 Ill. 204, 93 N. E. 158, 139 Am. St. Rep. 319.

Plaintiffs, as the lessees for oil and gas of the lot owners, have an implied right from them to make the same use of the fee in the street which they themselves could have made. The only method of transporting natural gas is by means of pipe lines, and the location of the wells in this case makes it necessary to cross one of the public streets of the town; and to permit plaintiffs to drill gas wells within the town and then deny them the right to use the only means available for the transportation of the product of the wells, would be inequitable. We do not deny the right and power of the town of North View to pass ordinances making reasonable and uniform rules and regulations respecting the manner of laying pipe lines in its streets, and prescribing reasonable conditions on which it can be done. All we say is that it has not done so; and plaintiffs have violated no law of the state or ordinance of the town. We, therefore, reverse the decree and remand the cause for further proceedings according to the principles governing courts of equity.

*Reversed and Remanded.*