Farr, J.
The cases of Carl S. LaRoche, plaintiff, against William F. LaRoche, defendant, and Carl S. LaRoche, plaintiff, against Louis F. La-Roche et al., defendants, were actions in partition filed concurrently on the 26th day of September, 1916, in the court of common pleas of this county. *244 In the first case the plaintiff seeks the partition of lots numbered 19 and 73 in Harris’ addition to the city of Bellaire. In the second action partition is sought of certain- real estate of which John La-Roche, Jr., died seized. To each petition an answer was filed denying that the plaintiff had any right, title or interest in and to the premises sought to be partitioned, and asserting that title .vested in defendants; and in the first case it was sought by cross-petition to quiet 'the title 'to the premises described in the petition.
Partition was ordered in the court below, from whi-ch order and judgment an appeal was taken to this court. The causes were heard together here and will be decided in like manner.
In the first case -the plaintiff, Carl S. LaRoche, claims an undivided one-third interest in and to the lots above mentioned, which claim the defendant denies, alleging that he is the sole owner of said premises in fee simple. The plaintiff claims title by certain provisions of the last will and testament of John LaRoche, Sr., hereinafter qtioted. The defendant claims title by provisions of said will and the last will and testament of Fred LaRoche, deceased, and by reason of a certain deed made and delivered by Fred LaRoche to him on or about the 8th day of October, 1888.
John LaRoche, Sr., died testate June 9, 1884, and his last will and testament was duly admitted to probate in this -county June 30, 1884. Fred La-Roche died -testate on or about October 21, 1888. John LaRoche, Jr., died -intestate -and without' *245 issue in 1890. Charlotte Schumacher LaRoche, widow of John LaRoche, Sr., died June 21, 1908. John LaRoche, Sr., and Charlotte Schumacher were married in Germany in 1852. At the time of their marriage Charlotte Schumacher had a son, Fred, about two years of age, born out of wedlock, who, ever after said marriage, made his home in the home of John LaRoche, Sr., until the time of his (Fred’s) death, on the 8th day of 'October, 1888. Shortly prior to his death, Fred LaRoche, so known in the community, made a last will and testament and a deed of conveyance devising and conveying all o.f his estate to William F. LaRoche, including any interest he might have in and to the estate of John LaRoche, Sr. Fred LaRoche, in 1879, was charged by one Samantha Roofer with being the father of her unborn child; their marriage followed at St. Clairsville, on March 18th of that year, and on May 16th following, about two months later, this plaintiff, Carl S. LaRoche, was born, and he bases his right to partition herein upon the claim that he is the son of Fred LaRoche, deceased, but claims not herein from Fred LaRoche, but directly from John LaRoche, Sr., and under favor of the third, fourth and fifth items of the said last will and testament of John LaRoche, Sr., deceased, which read as follows:
“Item 3. I give and devise to my said wife all my real estate during her natural life or so long as she remains unmarried, she to have all the rents and profits, keep the same in repair and pay all taxes.
*246 “Item 4. In case my said wife shall, marry again she shall then only have such share or portion of my estate as the law allows, and the remainder shall be equally divided among my four children, Fred, Louis, John and- William LaRoche, and in case either or any of them should be deceased at such time leaving no children, the share of such one shall be equally divided among my other children.
“Item 5. At the death of my said wife, should 'she remain unmarried until that time, it is my will that all ,my estate, real and personal, be then equally divided among my four sons aforesaid, and in case any shall be deceased at that time his children are to have his share, and if he has no children living the same 'shall be equally divided among the remaining ones or their heirs.”
The issue to be determined here involves the construction of the foregoing items, and is simply this: Did the interest or share of Fred LaRoche under said will vest in him absolutely during his lifetime so that he might devise it by will or convey it by deed? If so, Carl S. Roche has no interest and is not entitled to partition herein because Fred LaRoche, whom he claims was his father, sought to devise by will and convey by deed to defendant 'herein the property asked to be partitioned. If, on the other hand, said interest did not vest, or vested subject to being divested upon the death of Fred LaRoche before the death of :his mother, Charlotte LaRoche, then Fred La-Roche had no interest to convey to William F. LaRoche, which he attempted to do by will and deed, as above stated.
*247 In order that subsequent discussion may be better understood, the relation of the parties will be here considered.
It is urged in argument that Fred LaRoche, so called, was not the son of John LaRoche, Sr., and therefore Carl S. LaRoche, even though he 'be the son of Fred LaRoche, could not take directly from John LaRoche, Sr. It must be noted that said testator in item 4 provides as follows: “The remainder shall be equally divided among my four children, Fred, Louis, John and William La-Roche.” And again in item 5 the testator provides among other things that “all my estate, real and personal, be then equally divided among my four sons aforesaid.”
It will be observed that in the foregoing said testator designates Fred as one of his “children,” also as his “son.” And having so provided, it must be so considered, no matter whose son he was; though he be the son of a neighbor the testator might elect to include him as he did in his will with his children born in lawful wedlock. And he further provided that if Fred were deceased at the date of the death of his (testator’s) wife, Fred’s children should have his share. In any event, Carl LaRoche may take under said will if he is Fred’s son, which will be discussed later.
However, the record discloses that the boy Fred was taken into the home of John LaRoche, Sr., upon his intermarriage with the mother, and there reared and treated as one of the children until the time of his (Fred’s) death, when his body was laid in the family lot in Rose Hill Cemetery, and his name inscribed on the “LaRoche” family monu *248 ment, and -so paternal was the conduct of John LaRoche, Sr., toward Fred, that Louis LaRochesays that until he (Louis) reached the age of 15 years he considered Fred his older brother, and John LaRoche, Sr., by and in that solemn instrument, his last will and testament, designates Fred as one of his “children” and as one of his “sons aforesaid.” It may be that the testator and his wife-brought a secret from Germany, which they prudently and properly enough saw fit not to impart to others; -but be that as it may, it is to the credit of John LaRoche, Sr., that whether or not he was the natural father of Fred he did his full duty by him and fittingly and fully acknowledged him as one of the rightful objects of his bounty, and so. far as the provisions of this will are concerned he may be treated as a son.
Objection is made to the testimony of William and Louis F. LaRoche in this and the court below, which it i's claimed is admissible under the last clause of 'Section 11495, General Code. Without taking time to discuss the issue fully, suffice it to say that the testimony is found to be incompetent in view of the provisions' of s'aid -section, therefore it must be practically eliminated from the consideration of this case.
However, to maintain his right to partition hereto, Carl S. LaRoche must be found to be the son of Fred LaRoche, deceased. Under pressure of circumstances Fred LaRoche married Samantha Roofer in 1879. A little less than two months later Carl was born in lawful wedlock, and, although Fred LaRoche never lived with his wife or family, yet having -been born in lawful wedlock, *249 a strong presumption obtains in favor of Carl’s legitimacy, and it is so observed in Powell v. State, 84 Ohio St., 165, by Donahue, J., at page 168, as follows:
“A strong presumption always obtains that a • child either born in lawful wedlock, or within the competent time after its termination, is legitimate."
And in Miller v. Anderson, 43 Ohio St., 473, in the second paragraph of the syllabus, it was held:
“2. By such marriage, the man so marrying consents to stand in loco parentis to such child, and is presumed in law to be the father of the child, and this presumption is conclusive.”
The foregoing is supported by Tioga County v. South Creek Tp., 75 Pa. St., 433; State v. Romaine, 58 Ia., 46, 48; State v. Herman, 35 N. C. (13 Ired.), 502; Parker v. Way, 15 N. H., 45; Page v. Dennison, 29 Pa. St. (5 Casey), 420; and 1 Wigmore on Evidence, Section 134.
In addition to this presumption, a lady by the name of Mrs. Kate Naylor testified at the trial below that within about' one hour of the birth of Carl, Fred LaRoche was at the bedside of his wife. His presence there would seem to indicate a friendly interest at least in both mother and child. The record does not clearly disclose that he -ever disowned the boy, but, on the -contrary, he provided in his last will and testament a legacy of five dollars, though he tried to alien from the child all of the remainder of his estate by said will and deed.
Section 8591, General Code, provides in part as follows:
*250 “When, by a woman a man has one or more children, and afterward intermarries with her, such issue, if acknowledged by him as his child dr children, will be legitimate.”
The record, therefore, fairly discloses that Fred LaRoche recognized Carl as his son, and, by -the required quantum of proof, that Carl S. LaRoche is the son of Fred LaRoche, deceased.
'Coming how to construe said will, it is fundamental that the controlling principle in its construction is to ascertain from the whole will the intention of the testator as therein expressed. Linton v. Laycock et al., 33 Ohio St., 128, and Barr v. Denney et al., 79 Ohio St., 358.
However, no specific rule or rules can be declared for the construction of wills, because each must be construed largely in the light of its own provisions.
Governed by these principles, it is clear that the testator desired his wife to have a life estate in his estate during her natural life, or so long as she remained unmarried.
In the event that she remarried she should have the .portion of his estate provided by law, and the remainder be equally divided among his four children, including Fred, and in case any of them should be deceased at such time, without issue, such share should be equally divided among the surviving children. In the event that said widow should die, without remarriage, then the estate should be divided equally among his “sons aforesaid,” and in case any were deceased, at the time of the wife's decease, and such deceased son left children, then such children should have the de *251 ceased parent’s share, and, if no children survived, then such share should be equally divided among the remaining sons, or their heirs. Clearly it was the desire of the testator that his “next of kin” should, in any event, be the beneficiaries of his estate; but can it be so held under the provisions of said will?
That depends, as above stated, upon whether said interest vested absolutely in Fred LaRoche at the death of testator or whether it vested subject to being divested by the death of Fred before his mother. The mother did not remarry and Fred preceded her in death by about ten years. He left his son Carl; it is clear, therefore, that it was the intention of the testator, as expressed in item 5, the son Fred being deceased at the time of his mother’s death, that the son Carl should have his father’s share; that is to say, that the grandson should have the son’s share. And which one was to receive that share could only be determined by the situation at the time of the widow’s death.
The issue must be determined, therefore, by determining whether,, the estate vested absolutely in Fred LaRoche, or whether it vested subject to being divested by his death before that of his mother.. The distinction between a vested and contingent interest is clearly made in Richey v. Johnson, 30 Ohio St., 288, 294, and need not be here discussed. While it is true that under the common law, it was impossible to limit any estate after a fee, yet by the enactment of the “Statute of Wills” the doctrine of executory devises has been adopted, and it is now the law that there *252 may be created by a will a vested estate in fee simple liable to be divested in favor of another estate. The controlling authority -in this jurisdiction is Collins v. Collins, 40 Ohio St., 353. In this case the testator devised his real and personal estate to his wife during her natural life, with the remainder over to his two sons and their heirs. In the event of the death of either, without issue, the estate should go to the survivor. It was held in the first paragraph of the syllabus as follows:
“1. That by the will of their father * * * each took a vested remainder in fee simple in one undivided half of the lands, defeasible upon the contingency of the death of either, leaving no children at his decease, and leaving the other brother to survive him.”
The foregoing is supported in principle by Jeffers v. Lampson, 10 Ohio St., 101; 24 Am. & Eng. Ency. Law (2 ed.), 431; 2 Blackstone (1 Cooley’s ed.), 172; 1 Tiffany on Real Property, Section 134; Tiedman on Real Property (2 ed.), Section 530.
It is urged that the law favors the vesting of estates in Ohio, and so it is held in the somewhat notable case of Linton v. Laycock, 33 Ohio St., 128, frequently cited with approval, and which is supported by the strong weight bf authority in this and numerous other jurisdictions. Among others are the following notable cases: McArthur v. Scott, 113 U. S., 340, 28 L. Ed., 1015, 5 Sup. Ct. Rep., 652; Owen v. Eaton, 56 Mo. App., 563, 569; Woolley v. Paxen, 46 Ohio St., 307, 318; Bolton v. Bank, 50 Ohio St., 290, 293; Johnson v. Johnson, 51 Ohio St., 446, *253 460; Canfield v. Fallon, 26 Misc., 345, 57 N. Y. Supp., 149.
A case well in point is McCarthy v. Hansel et al., 4 Ohio App., 425. The first paragraph of the syllabus reads as follows:
“1. The will of a testator contained a provision devising his estate to his widow for life and the following: ‘After the death of my wife, I give, devise and bequeath unto my.children all of my estate, real or personal, of whatsoever kind and Wheresoever situated, share and share alike; if any of my children should die ’ previous to that time, leaving heirs of their body, then and in that case such heirs to take the share or shares, which would have been due to their parent or parents, if living.’ Held: That the estate devised to each child wds a vested remainder, subject to be divested by his death during the continuance of the life estate, and a deed made by such child during such time conveyed no interest in • the property.”
The foregoing can scarcely be differentiated in any way or manner from the instant case, and especially as to the facts .which need not be discussed here.
In full accord with the above case and the case at bar is that of Camp v. Cronkright et al., 13 N. Y. Supp., 307, the syllabus of which reads as follows:
“A testator devised to his wife certain property during ‘her natural life, and upon her death then I give and devise the same to my. children, share and share alike, absolutely and forever, the child' or children of any deceased child of mine to take the share which his, her or their parent would *254 ¡have -taken if living.’ After testator’s death, but during the life-time of his 'widow, C., one of his five ¡children,' conveyed an undivided fifth interest ■in the premises, and -his grantee -conveyed the same to defendant. Thereafter, and during the life-time of testator’s widow, C. -died, leaving three children, surviving him. Held, that the will vested an undivided fifth interest in remainder in the premises in C, subject, however, to be divested byjhis death in the life-time -of his mother; that defendant’'s title therein was subject to- be divested by the same contingencies; and that upon the death of C. -said fifth interest became vested in his surviving children.”
It is urged, however, that Anderson v. United Realty Co., 79 Ohio St., 23, is at variance with the foregoing. The second paragraph of the syllabus reads as follows:
“2. Where, in a will, there is a devise to a son, and if he dies without lineal descendants, living at. the time of his decease, then over, these words are not, by themselves, without assistance from other parts of -the will, sufficient to create an estate by implication in the lineal descendants, but the ■son takes-a fee-defeasible upon his death without lineal descendants, living at the time of his decease, and in the event of lineal descendants living at the time of the son’s decease his fee becomes ■absolute and such -descendants have no interest under the will as against his grantee.”
It will be observed that the principal issue under discussion in Anderson v. Realty Co. is estates by “implication,” which is not involved here. In the above ease the-son-took a fee defeasible upon *255 his death without lineal descendants, which indicates a similar view to that held in McCarty v. Hansel, supra, and so it is further disclosed in the discussion, of the cause by Summers, J., at page 50. It follows therefore that said case is not particularly helpful in determining the issue here, which, however, is practically determined by the cases above mentioned, and it must be held that the share or interest of Fred LaRoche vested in him at the death of testator John LaRoche, Sr., subject to being divested by the death of Fred before his mother, which actually occurred; therefore, Carl S. LaRoche, plaintiff, being the son of Fred LaRoche, whom he survived, also the widow, Charlotte LaRoche, he consequently, takes his father’s share, but directly under the will of John LaRoche, Sr. Therefore, the will and deed made by Fred LaRoche to defendant, William. F. LaRoche, were ineffective to convey title to his interest in the estate of John LaRoche, Sr.
An order of partition will be granted and the same commissioners named as appointed by the court below, unless some -change is desired.
The answer and cross-petition filed by defendant, William F. LaRoche, in the court below -asked the reformation of said deed because it recites the wrong lot numbers. In view of the finding herein, reformation will not be necessary so far as the property here involved is concerned; yet if it be considered advisable or desirable to direct such reformation, in order to remove any possible inference or 'suspicion of cloud from the property of such person or persons as may hold title to the *256 lots numbered in said deed, a proper decree'máy be entered for that purpose.
In the next case partition is sought by plaintiff of an estate by purchase owned by John LaRoche, Jr., at the time of his decease intestate and without issue, in 1890. The plaintiff’s right to partition in this case is based upon his claim that Fred LaRoche was the brother of John LaRoche, Jr., and that he, plaintiff, is the son of said Fred LaRoche.
It is urged that since the legitimacy of the said Carl S. LaRoche is raised here proof of his right to inherit through his alleged father, Fred La-Roche, must be clear and convincing, because it is claimed that the rule as to "the presumption of legitimacy arising from the marriage of Fred LaRoche and Samantha Roofer, prior to the birth of the boy, while applicable under the bastardy statute, is not applicable to actions where questions of heirship and inheritance are involved, and so it is held in Miller v. Anderson, 43 Ohio St., 473, third paragraph of the syllabus, which case can be easily distinguished, however, from the case at bar, since the facts are quite different. In the above case Emiline Miller while enciente, was married to one Riddlemoser, said marriage occurring about six months after pregnancy, of which Riddlemoser was fully aware, but married her with a full knowledge of her condition. The child was born in their home and was cared for by them jointly during some two and a half years, until Riddlemoser’s death. Another child was born to them, and about sixteen years after the birth of the first child, and some thirteen years *257 after Riddlemoser’s death, the said Emiline Miller filed a complaint in bastardy against one James M. Anderson, charging him with the paternity of said first child. The court held, and quite properly, that all the facts being known to Riddlemoser at the time of marriage he had elected to stand in loco parentis to said child, which, having been born in lawful wedlock, was conclusively presumed'to be legitimate; but, as above stated, this presumption was held to have no application to actions where questions of heirship and inheritance are involved, and the reason is obvious— another child had been born whose rights as an heir at law could not be aliened by the father’s election to stand in loco parentis to the unborn child of the woman whom he married and whose condition he well knew at the time. It is somewhat interesting to contemplate the paragraph of the syllabus under discussion here, in view of the fact that but a single statement is made in relation thereto in the opinion by Atherton, J., at page 480, as follows:
“As recognized in that case, we do not affirm this rule holds good on questions of heirship. There the rights of others are involved outside of the husband and the alleged bastard child.”
In the foregoing discussion reference is made to the case of State v. Shoemaker, 62 Iowa, 343, which is quite similar to the case of Miller v. Anderson, of which Judge Atherton observes at page 479 as follows:
“He chose to marry her and thus legitimate her issue and make it his own. The act would have made the child heir to his estate, and, being *258 made so by 'his act, can the inhuman mother, by her uncorroborated testimony, make it a bastard?”
And again, on the same page, as follows:
“Can they be bastardized by proving somebody else begat them, and especially can their mother bastardize them and take from them the rights they acquired by the marriage of their mother with the man that acknowledged them to be his own ?”
It is true that the syllabus is the law of the case, but it is very difficult here to harmonize the dictum with the third paragraph of the syllabus; However, it must be noted that 'said paragraph does not sustain the contention here, that where the claim of heirship is made in such case the proof must be clear and convincing — far from it; it merely holds that a presumption of legitimacy arising from birth within lawful wedlock has no relation to actions where questions of heirship and inheritance are involved; that is, such presumption could not obtain in such cases conclusively against facts to the contrary. However, the modern tendency of courts is to relax this rule somewhat, as stated in Wilson v. Wilson et al., 39 C. D., 393, 8 Ohio App., 258, a well-considered case, the first paragraph of the syllabus of which reads as follows:
“1. A decree of divorce between parents of an unborn child does not affect the legitimacy of the ■child, even though such legitimacy was effected by the parents marrying after this child was conceived. Such child, therefore, is an heir at law of the father and as 'such has an interest to contest his will.”
*259 Kunkle, J., in discussing the above case of Miller v. Anderson, observes at page [263] 396 as follows:
“We think this discussion applies to heirship and the right of inheritance, although the issue in that case was limited to proceedings under the bastardy statutes.”
The most, therefore, that can be said for the above case of Miller v. Anderson is that it holds in effect that in such cases proof of heirship or the right to inherit must be proven as any other fact; that is, affirmatively, or by a preponderance of the evidence, the burden being upon one asserting such claim, and so it is held in Hall v. Wilson’s Heirs, 14 Ala., 295; Payne’s Admr. v. Payne, 29 Vt., 172, 70 Am. Dec., 402; 4 Ency. of Ev., 576. In the case at bar, Fred LaRoche, charged with the paternity of the son Carl, married the mother Samantha Roofer, who declared in court upon the trial of this cause that Fred LaRoche was the father of Carl; about two months after the marriage the child was born, and within about one hour Fred LaRoche was at the bedside, so Mrs. Naylor states, and it is not denied; a strange and most unusual place for an innocent man, especially if compelled to marry the woman against his will and convinced of his own innocence. Careful examination of the record fails to disclose that he ever expressly denied the paternity of the child, while in some ways, at least, his conduct betokens the fact that he recognized his share of the responsibility for this boy. True, he tried to alien the greater part of his property by deed and by will to his brother William, all but a bequest *260 of $5.00 to Carl, and thereby deprive this boy of any interest in his estate; however this is not conclusive of a refusal to acknowledge him as a son, because it is by no means unusual for a parent for some real or fancied grievance to disinherit or deprive a natural child of acknowledged legitimacy of any share or portion in such parent’s estate. Therefore, adopting here the discussion of these matters in the first case, so far as it may be of value, it follows that it must be held that Fred LaRoch’e was the brother of John LaRoche, Jr., and that the record shows affirmatively and by a fair preponderance of the evidence, as above stated, that Carl S. La’Roche is the son of Fred LaRoche, deceased, and is therefore entitled to partition in this cause, and the same order will be made as to the appointment of commissioners as made in the court below. An accounting as to rents and profits was made in the court below, and that issue is certified back for determination in said court. Partition ordered in both cases.

Judgment accordingly.

Pollock and Metcalfe, JJ., concur.