**Public Service Company of Northern Illinois, Appellee, v. Timothy J. Lynch, Highway Commissioner of Township of Proviso, Appellant.**

**Gen. No. 30,711.**

1. HIGHWAYS—*sufficiency of evidence to show electric transmission line constructed along public highway constitutes permanent obstruction to public use of highway.* Evidence in a suit to restrain a township highway commissioner from interfering with an electric transmission line constructed by a private corporation, with the consent of the abutting owners, along a public highway in such township, held to show that the transmission line, as constructed, is a permanent structure which interferes with the public use of the platted highway and with the performance of the commissioner's statutory duty to keep such roadway in repair as well as with projected improvements thereof.

2. INJUNCTIONS—*jurisdiction of equity to restrain interference by highway commissioner with electric transmission line constructed along public highway within his jurisdiction.* A court of equity is without jurisdiction, at the suit of a private corporation which has constructed an electric transmission line along a public highway, to restrain the highway commissioner having jurisdiction over such highway from interfering with such transmission line for the purpose of accommodating the public use of such highway until such commissioner shall have procured the permission of the court to compel the making of the desired changes in such line.

Public Service Co. of Northern Illinois v. Lynch, 242 Ill. App. 28.

Appeal by defendant from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed October 5, 1926. Rehearing denied October 18, 1926.

DITTUS & CHATROOP, for appellant.

SAMUEL K. MARKMAN and ISHAM, LINCOLN & BEALE, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a decree restraining the defendant, who is the highway commissioner of the town of Proviso, in Cook county, from "interfering in any manner whatsoever, until the further order of the court," with complainant's "electric transmission line" as constructed by it in Pushek road, a rural public highway in that township. The decree was entered after a hearing upon the bill, answer and replication, and upon evidence taken before a master, and the master's report.

Complainant is an Illinois corporation, engaged in the business of furnishing electrical current for heat, light and power. It owns and operates transmission lines of poles and wire, carrying currents of electricity of high voltage. Pushek road is a township road for a distance of a mile and a half running south from the southern limits of the village of Bellwood to Twenty-second street extended west from the city of Chicago. The road as platted is sixty-six feet wide, but the fences of abutting owners encroach on either side from five to ten feet. The south mile of the road is much traveled, and that part is improved with a pavement of oiled macadam eighteen feet wide, with shoulders of earth and ditches on both sides. On the north half mile, the roadway is macadam twelve feet wide, with like shoulders and ditches. The paved por-

tion of the road runs in a straight line the whole distance, except for a temporary curve at one point where the road follows the meander line of a small creek crossing the highway.

Desiring to construct one of its transmission lines in Pushek road, complainant presented to the defendant, as highway commissioner, a draft of a permit or franchise permitting it to erect and maintain a pole line in the highway. Defendant told complainant he would grant the permit if properly drawn by his attorney, but that provision must be made to pay an inspector to see that the poles were properly set, and that the consent of the abutting property owners must be first secured. The agent of complainant who asked for the permit verbally agreed to these conditions, and defendant employed an attorney, who had a conference with a representative of the complainant and then drafted and submitted to complainant a document granting permission to complainant to erect its proposed transmission line and maintain it for twenty-five years, provided the line should be located in the highway according to the direction of the defendant as highway commissioner, and so as not to interfere with the use of the highway for ordinary traffic and travel and the usual and natural requirements of the road for highway purposes, and should be maintained in good repair and kept reasonably safe at all times, and that complainant should pay for "actual inspection and other charges incurred" by defendant, reserving to him and his successors the right to compel the relocation of the line or the removal thereof, or placing it underground, "whenever reasonable requirements of said road for other highway purposes make such change or removal reasonably necessary or convenient."

Complainant did not accept this permit or agree to defendant's conditions, and no permit was issued, but, after procuring the consent of the abutting owners,

complainant proceeded to erect its transmission line without the permission of the highway commissioner, whereupon defendant stopped the work. An attempt was made to come to an agreement, which failed, defendant insisting that the poles and wires should be placed in a straight line along the road near the fence line, which complainant was not willing to do. Then complainant filed a bill praying that defendant be enjoined from interfering with the construction of its transmission line, alleging that the route it intended to follow was not on any part of the "traveled" highway nor in any ditch. Upon the filing of the bill, a motion was made for a temporary restraining order, but instead of granting the motion an order was entered giving complainant leave to file an amended bill and giving defendant time to answer the same, with the further provision that if complainant "considers that it is unlawfully, illegally or unreasonably interfered with by the defendant in the construction of its line * * * complainant may proceed with such construction without interference, but at its own peril and without prejudice to the rights of the defendant as highway commissioner, or this court, to order said line removed or relocated in accordance with the law and the facts and circumstances appearing on the hearing hereof, or upon the trial of this cause on its merits." When defendant's answer was filed, the cause was referred to a master and the taking of testimony begun. No other restraining order was made until the order appealed from was entered.

After the entry of the order last above quoted, complainant proceeded with the construction of its line, without further interference by defendant. As constructed, the line of poles is not built in a straight line nor along the fence lines, as requested by defendant, but for 2,600 feet north from Twenty-second street the line is built on the west side of the highway, then crosses to the east side and continues north to a point

north of the crossing of the Illinois Central Railroad, where the line again crosses the highway in a north-westerly direction to the west side and continues on the west side to the southern limits of the village of Bellwood. Except where it thus crosses the highway, at two different points, the line is from nine to eleven feet within the outer lines of the platted highway and from five to nine and one-half feet from the fence lines of the abutting owners. The master finds that at the point where the creek crosses the road, the pole line does not follow the dedicated road but goes east of the east highway line and follows the used road as it meanders along the creek, so that while at least one of the poles is at or near the center of the dedicated street, three others are almost on the easterly line of the platted highway. The master also finds that this was done to avoid interference with trees which, on the west side, are about forty feet high and on the east side, thirty-five feet high; that "for future safety of the line," these trees must be cut down or their tops trimmed so as to give at least fifteen feet "clearance," and where it is impracticable to remove the trees, it will be necessary to carry the line over the tops of the trees, or build around them. The evidence shows, and the master finds, that "straight construction is safer than curved construction and that the crossing of the highway by said transmission line increased the hazard of the line." One of complainant's witnesses testified that the line carries a current of 33,000 volts, direct contact with which would result in serious injury or death. The master finds that the line of poles, as thus constructed, does not constitute an obstruction to travel "as the same is now used by the traveling public," and does not constitute any interference with the drainage "as at present existing," but will interfere with the use of machinery in the cutting of grass and weeds, the grading of the road, and the repair of the ditches, and that

the four poles immediately north of the Illinois Central Railroad will interfere with defendant's presently contemplated plans for widening and straightening the highway.

Defendant takes the position that as complainant is neither a telegraph nor a telephone company, it had no right to build its line on Pushek road without defendant's consent, and without complying with defendant's demand that he be permitted to direct the location of the poles so as not to interfere with public travel and the proper repair and maintenance of the road. Complainant's position is that after complainant secured the consent of the abutting property owners, defendant had no authority to interfere with the erection of the poles, so long as the actual existing public travel on the road is not obstructed.

While it is undoubtedly true, as contended by the complainant, that where the fee of a highway is in the abutting owners, the public have only an easement therein and the abutting owners may use the part of the highway which is not used or required by the public in any manner that will not interfere with the full enjoyment of the public easement (*Sears v. City of Chicago*, 247 Ill. 204), it follows, as a corollary, that the rights of such an abutting owner are subordinate to the public easement (13 R. C. L. 123; 29 C. J. 549; *Johnson v. Whitefield*, 18 Me. 286), that is, to the paramount right of the public to use the highway for all purposes for which it may be needed by the public (2 Elliott on Roads and Streets, § 827).

Assuming, therefore, but without deciding, that the abutting property owners might grant to complainant the same right which they have to use the highway, their right in that respect is subject to the paramount right of the public to use it, and it may not, either with or without the consent of the public authorities, be obstructed or encroached upon by any *permanent* structure inconsistent with the public right. Such

34        APPELLATE COURTS OF ILLINOIS.

Public Service Co. of Northern Illinois v. Lynch, 242 Ill. App. 28.

public right is not limited merely to travel over the highway "as now existing," nor to any particular part less than the whole, of the highway.

In *People v. Harris*, 203 Ill. 272, the following language is quoted from Elliott on Roads and Streets:

"Any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se,* and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for if one person can permanently use a highway for his own private purposes, so may all; and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without becoming a nuisance there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners, but to all the tax-payers and the traveling public as well. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes."

The same principle is recognized by statute. Section 221 of the Criminal Code [Cahill's St. ch. 38, ¶ 453] makes the obstruction or encroachment of a highway a public nuisance punishable by fine, and in some cases by imprisonment, and provides that such nuisance may, by order of the court before which the conviction is had, be abated by the sheriff or other officer at the expense of the defendant. The statute on Roads and Bridges (chapter 121, art. 6, § 50, Cahill's St. ch. 121, ¶ 56) provides that the highway commissioner of each town shall have power and it shall be his duty, not only to lay out, alter, widen and vacate

roads as therein provided, but to keep the same in repair and improve them so far as practicable, to direct the construction and maintenance thereof, to prevent noxious weeds from growing thereon, "and to extirpate the same as far as practicable," and prevent all rank vegetable growth therein "by causing the same to be cut and destroyed prior to the seeding of the same, and at the farthest, prior to September 1st in each and every year." Other sections require the highway commissioner to designate from time to time what roads shall be dragged or otherwise improved, and to make contracts therefor. Section 151 [Cahill's St. ch. 121, ¶ 167] makes it an offense punishable by fine to obstruct a highway, and authorizes the highway commissioner, after due notice, to remove the obstruction and collect the cost of such removal from the offender. Section 155 [Cahill's St. ch. 121, ¶ 172] makes it the duty of the highway commissioner to seasonably prosecute such offenders. In *Smith v. McDowell*, 148 Ill. 51, it was said (p. 68):

"The permanent encroachment upon a public highway or street unauthorized by the legislature, and the creation of a purpresture therein, which obstructs the free and uninterrupted passage of the public, is, as a matter of law, a public nuisance. The matter of inconvenience to the public, or that sufficient of the street may remain unobstructed to still accommodate the public travel, cannot be considered."

The evidence shows that the transmission line of the complainant as constructed is a permanent structure, intended by the complainant to be such, and is of a character which interferes with the use of the platted highway to the extent of preventing him [appellant] from straightening and widening the roadway and making it more difficult and more expensive for him to exercise his statutory duty of keeping the highway in repair and the roadside free from weeds. The evidence shows that the work of road-grading

and weed-cutting has been done by machinery at a comparatively small expense to the township, and that the presence of complainant's poles upon Pushek road as now constructed will require some of this work to be done by hand at considerably greater expense. Conceding, therefore, that complainant had the right, with the consent of the abutting owners, to make such temporary use of the highway as it desired, not inconsistent with the rights of the public in the highway, it is clear from the evidence that the line of complainant, as constructed by it, is not of that character.

It is apparent from the form of the decree that the chancellor felt that some authority should rest somewhere to enable the public to regain the use of that part of the highway occupied by complainant's poles, at some future time if conditions should change. This imposes upon the defendant, a duly elected public officer, charged with the duty of preventing and removing obstructions in the highway, the burden of requiring him to apply to the court for permission to perform his duty, whenever the public need requires that complainant's poles shall be removed or their position changed. Defendant, and his successors in office, having statutory duties to perform, should not be placed in the position of being obliged to ask the court's permission to perform their duty.

For the reasons stated, the decree is reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and BARNES, J., concur.